WILLIAM C. GENTRY *v.* WARDEN, CONNECTICUT CORRECTIONAL INSTITUTION ET AL.

HOUSE, C. J., SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, JS.

Argued November 14, 1974—decision released February 18, 1975

*Maxwell Heiman,* special public defender, with whom, on the brief, were *Louis P. Kocsis,* and *William J. Eddy,* for the appellant (plaintiff).

*Abbot B. Schwebel,* assistant state's attorney, for the appellees (defendants).

BOGDANSKI, J.  This petition for a writ of habeas corpus was filed by William C. Gentry following a probation violation hearing at which the Superior Court (*Barber, J.*) revoked his probation and ordered him to serve a previously suspended sentence.  The trial court (*Longo, J.*) dismissed the petition.  After the granting of certification Gentry appealed to this court, assigning error in the court's finding of facts,[1] in the conclusions reached and in the overruling of his claims of law.

The record discloses that on May 28, 1970, Gentry pleaded guilty to three drug-related charges and was sentenced to the Connecticut correctional institution at Somers for an effective term of five to six years.  The execution of that sentence was suspended and he was placed on probation for two years.  Paul McGeary, a probation officer, was assigned to supervise Gentry's probation and met

---

[1] The assignments of error directed to the court's finding of facts have not been briefed and are considered abandoned.  *Pappas v. Pappas,* 164 Conn. 242, 243, 320 A.2d 809.

with him on June 1, 1970, and read the conditions of probation to him. Gentry then read the conditions himself, signified that he understood them and signed the conditions. One of those conditions was that Gentry report to McGeary as directed. On that same day Gentry asked for a transfer of probation to the state of Maine pursuant to the provisions of the Uniform Act for Out-of-State Parolee Supervision, General Statutes §§ 54-132 to 54-138, hereinafter referred to as the Uniform Act. On June 8, 1970, a formal request was made for such transfer and the Maine authorities subsequently accepted Gentry as a probationer. As part of the transfer to Maine, Gentry signed an agreement that he would comply with the conditions of probation fixed by both Connecticut and Maine, and that he would make his home at an address in Maine until a change of address was duly authorized by the Maine authorities.

Three months later Gentry requested that Maine transfer his probation to Massachusetts. Without waiting for official action to be taken by Maine, Gentry established a residence in Boston, Massachusetts. On September 17, 1970, Gentry telephoned McGeary, advised him of his desire to relocate, and stated that he would contact McGeary as soon as his plans "firmed-up." Gentry was told by McGeary that he, McGeary, would have to be notified. About the same time, the Maine authorities advised McGeary of Gentry's request to transfer to Massachusetts and gave him Gentry's address in Boston. By letter dated September 21, 1970, Maine also notified McGeary that it had terminated its "official interest" in Gentry's probation. After September 17, 1970, McGeary did not hear from Gentry for over four months.

On January 27, 1971, McGeary applied for a warrant for the arrest of Gentry for violation of probation. In his affidavit, McGeary alleged that Gentry had violated his probation in two respects: (1) the lack of any contact with his probation officer for over four months, and (2) a purported conviction in Massachusetts District Court on an information charging Gentry with possession of marihuana.

On the advice of his Massachusetts attorney and his Connecticut public defender, Gentry returned to Connecticut. He was presented before the Superior Court where he was represented by the public defender, and, after a hearing, he was found to be in violation of probation. The court, pursuant to § 54-114 of the General Statutes (Rev. 1958), now § 53a-32, put into effect the original sentence as imposed and Gentry commenced the service of his sentence.

Gentry claims error in the trial court's conclusion that Maine terminated its supervision of Gentry by the letter it sent to McGeary on September 21, 1970, in which the following language appears: "we [the Maine probation officials] are terminating our official interest in this case at this time." Section 54-133 (a) (2) states "that each receiving state shall assume the duties of visitation of and supervision over probationers or parolees of any sending state . . . ." The "official interest" of the receiving state in the probationer is, therefore, the assumption of the duty of supervision. When Maine terminated its "official interest" in Gentry it no longer assumed the duties of supervision. The trial court did not err in concluding that Maine had terminated its supervision of Gentry.

The petitioner's next claim of error is directed to the court's conclusion that Connecticut automatically resumed its supervision and control of Gentry's probation upon notification that Maine had terminated its official interest in Gentry. Gentry argues that McGeary knew of his address in Massachusetts but made no attempt to contact him. The short answer is that it was the obligation of Gentry to report to McGeary, not vice versa. From the conditions of probation and the signed agreement, Gentry knew that he had to report to someone. If he determined that he did not have to report to the Maine authorities, he should have known that he would be required to report to McGeary. Moreover, McGeary directed him to do so by telephone on September 17, 1970. The legislature in adopting the Uniform Act did not intend to create a vacuum in which a transferee could avoid his requirement to report to probation officials, a requirement that is an essential condition for successful probation supervision. We conclude that when Gentry requested a transfer to Massachusetts, and Maine terminated its supervision, he was required to report to the Connecticut authorities.

Gentry argues that the terms of the Uniform Act prevent Connecticut from finding him in violation of his probation because Maine had not found him in violation. A search of §§ 54-132 to 54-138 reveals that there is no such prohibition. Section 54-133 (a) (3) specifically permits a sending state to retake probationers from a receiving state without any formal requirements or extradition proceedings, "and the decision of the sending state to retake a person on probation . . . [is] conclusive upon and not reviewable within the receiving state . . . ."

The trial court correctly concluded that Gentry's failure to report to the Connecticut authorities was a violation of the conditions of his probation.

It was conceded at the hearing that Gentry had been convicted of possession of marihuana in Massachusetts District Court and that the conviction was being appealed. Gentry argues that the conviction should not have been considered a violation of his probation because the appeal entitled him to a trial de novo in Massachusetts Superior Court. In *State* v. *Roberson,* 165 Conn. 73, 79–80, 327 A.2d 556, this court approved the majority rule that a finding of conviction, whether or not final, is sufficient to support an order of probation revocation. "Since the standard of proof for revocation is substantially lower than that for conviction . . . , a conviction is deemed to constitute such overwhelming evidence of commission that the terms functionally are interchangeable in this context. . . . If the conviction should be reversed on appeal, the probationer is protected in that revocation based on conviction alone will be withdrawn . . . ." *State* v. *Roberson,* supra, 80. See also *United States* v. *D'Amato,* 429 F.2d 1284 (3d Cir.); *United States* v. *Chambers,* 429 F.2d 410 (3d Cir.); *United States* v. *Nagelberg,* 413 F.2d 708 (2d Cir.), cert. denied, 396 U.S. 1010, 90 S. Ct. 569, 24 L. Ed. 2d 502. Here there was undisputed evidence that Gentry had been convicted of a crime. The subsequent appeal did not prevent the court from finding that the conditions of probation had been violated.

Gentry's final claim is that he did not receive the effective assistance of counsel at the probation violation hearing. To support that claim he relies on the failure of his court-appointed counsel to advise

the court of (1) Gentry's transfer to Maine, (2) the procedural and technical aspects of the Uniform Act, and (3) the fact that Maine had not found Gentry to be in violation of his probation.

The right to assistance of counsel is guaranteed to a defendant in a criminal proceeding by the sixth and fourteenth amendments to the constitution of the United States. *Gideon* v. *Wainwright,* 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799. That right has been extended to all defendants in probation violation hearings in this state by § 53a-32 of the General Statutes, and it is mandated by due process in cases where the probationer requests counsel and claims that he did not commit the alleged violation or that there are substantial reasons which justified or mitigated the violation. *Gagnon* v. *Scarpelli,* 411 U.S. 778, 93 S. Ct. 1756, 36 L. Ed. 2d 656. From the facts of this case, Gentry's right to counsel should be treated as one of constitutional dimension.

"It is well-established law that the mere perfunctory appearance of counsel will not satisfy the constitutional mandate. . . . Rather, the right to counsel means that one has a right to the conscientious services of competent counsel." *Palmer* v. *Adams,* 162 Conn. 316, 320, 294 A.2d 297, and cases cited therein. In determining what constitutes ineffective assistance of counsel we have applied the test of whether the representation of counsel has been so woefully inadequate as to make the trial a farce and a mockery of justice. *Palmer* v. *Adams,* supra, 321; *State* v. *Costello,* 160 Conn. 37, 40, 273 A.2d 687; see *United States ex rel. Boucher* v. *Reincke,* 341 F.2d 977, 982 (2d Cir.).

Recently, that stringent test has been criticized for placing an undue burden on the defendant; Finer,

"Ineffective Assistance of Counsel," 58 Corn. L. Rev. 1077, 1078; see *McCracken* v. *State,* 521 P.2d 499 (Alaska); and several courts have abandoned the "farce and mockery" standard. See, e.g., *Beasley* v. *United States,* 491 F.2d 687, 696 (6th Cir.); *United States* v. *DeCoster,* 487 F.2d 1197, 1202 (D.C. Cir.); *United States* v. *Hayes,* 444 F.2d 472, 475 (5th Cir.), cert. denied, 404 U.S. 882, 92 S. Ct. 210, 30 L. Ed. 2d 163; *Moore* v. *United States,* 432 F.2d 730, 736 (3d Cir.); *Risher* v. *State,* 523 P.2d 421, 424 (Alaska). The new standard adopted in those decisions is that defense counsel's performance must be reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law.[2] The defendant's burden is to show that his counsel's conduct fell below that standard and that the lack of competency contributed to the conviction. *Risher* v. *State,* supra, 425.

In turning to the facts of this case, it is clear to us that under either the "farce and mockery" test or the less stringent "range of competence" test, Gentry did receive effective assistance from his counsel. The matters claimed not to have been raised by the public defender have already been discussed in this opinion and found to lack merit. The evidence printed in the appendices discloses that the public

---

[2] In *United States* v. *DeCoster,* 487 F.2d 1197, 1202 (D.C. Cir.), the standard was stated as follows: "[A] defendant is entitled to the reasonably competent assistance of an attorney acting as his diligent conscientious advocate." In that case the American Bar Association Standards for the Defense Function, ABA Project on Standards for Criminal Justice (App. Draft 1971), were adopted as guidelines for determining whether a defendant had received "reasonably competent assistance." See also *Coles* v. *Peyton,* 389 F.2d 224, 226 (4th Cir.), cert. denied, 393 U.S. 849, 89 S. Ct. 80, 21 L. Ed. 2d 120; *State* v. *Harper,* 57 Wis. 2d 543, 552, 205 N.W.2d 1.

defender determined that the major issues before the court were Gentry's failure to report to McGeary and his conviction in Massachusetts. He geared his defense to those two issues and could properly have discounted the arguments put forth now as not relevant to his client's defense. Hindsight will almost always reveal possible alternatives in trial tactics. "[T]he issue, therefore, is not what counsel should have done to constitute the proper representation of the defendant considering the case in retrospect, but rather, whether in the circumstances, as viewed at the time, the defendant received effective assistance of counsel." *State* v. *Ralls,* 167 Conn. 408, 432, 356 A.2d 147. There was no error in overruling the petitioner's claim that his counsel's assistance was ineffective.

There is no error.

In this opinion the other judges concurred.