## ISAAC PARHAM *v.* WARDEN OF BRIDGEPORT CORRECTIONAL CENTER

SUPERIOR COURT     FAIRFIELD COUNTY     FILE NO. 156668
AT BRIDGEPORT

Memorandum filed June 25, 1975

*Margaret P. Levy* and *Sue L. Wise,* for the plaintiff.

*Carl R. Ajello,* attorney general, and *Cornelius F. Tuohy,* assistant attorney general, for the defendant.

BERDON, J. The plaintiff brought this application for a writ of habeas corpus, alleging that he was being illegally confined pursuant to a parole violation warrant.

On September 24, 1970, the plaintiff was sentenced to a term of two to five years in the Connecticut correctional institution at Somers for violation of the drug laws. On September 17, 1971, he was paroled. A condition of his parole was that he enter DayTop, Inc., in order to take advantage of its drug

rehabilitation program. He remained at DayTop until November 28, 1971, when he left without permission. Several days later he reported to his parole officer by telephone. He told the parole officer that he was in Stamford and did not wish to return to DayTop. The officer told him that he would be in violation of his parole if he did not return to DayTop. There was no further contact between the plaintiff and the officer or the parole department until October 15, 1974. The date of expiration of the plaintiff's maximum sentence if he had not been admitted to parole was May 1, 1974.

On December 15, 1971, a parole violation warrant was requested by the parole officer alleging that the plaintiff violated the conditions of his parole by leaving DayTop. That warrant was issued on December 21, 1971.

On October 14, 1974, the plaintiff was arrested by the Stamford police and detained for unrelated charges at the Bridgeport correctional center. On October 15, while he was incarcerated for those unrelated charges, a parole officer gave him informal notice of the parole violation and the issuance of the warrant. That communication was the first notice that he received of the violation and warrant, which was issued approximately three years prior thereto, and occurred five and one-half months after the expiration of the maximum sentence. On October 25, 1974, a parole officer served the plaintiff with a notice of parole violation which formally charged him with the alleged violation.

The plaintiff claims that failure on the part of the state to give him notice of or execute the warrant within a reasonable time after its issuance constituted a violation of his constitutional rights guaranteed by the fourteenth amendment to the constitution of the United States. He seeks immediate release as his remedy.

Before proceeding further, it would be appropriate to look at the effect of the issuance of a warrant on the running of time on the original sentence imposed. Section 54-128 (a) of the General Statutes provides in part that "[a]ny paroled convict . . . who has been returned to the custody of the commissioner of correction or any institution of the department of correction for violation of his parole may be retained in the institution from which he was paroled for a period equal to the unexpired portion of the term of his sentence at the date of the *request or order* for his return less any commutation or diminution of his sentence earned." (Italics supplied.)

That section makes clear "that when a man is returned for violation of his parole he is to be held only for a time equal to the balance of his sentence remaining after the date of the issuance of the order for his return. That is, the running of a prisoner's sentence may be suspended between the time that the order for his return as a parole violator is made and the time when he actually gets back into prison, but while he is out of the prison by virtue of his parole his sentence is continuing to run until an order for his return is made." *Evans* v. *Walker,* 16 Conn. Sup. 22, 23; *Strain* v. *Warden,* 27 Conn. Sup. 439, 442. The time from the date of the issuance of the warrant to the date of the arrest is commonly referred to as "dead time." It tolls the running of the sentence, and the parolee is not entitled to credit for that time against his original sentence. Therefore, if the warrant had been immediately executed in this case, the plaintiff could have been returned by the parole board to prison to serve a maximum term from December 21, 1971, through May 1, 1974.

In 1972, the Supreme Court of the United States in *Morrissey* v. *Brewer,* 408 U.S. 471, 482, held that the liberty of a parolee "is valuable and must be

seen as within the protection of the Fourteenth Amendment. Its termination calls for some orderly process, however informal." The rationale of *Morrissey* was reached on the basis that fundamental fairness is required before the liberty of a parolee should be taken. "And society has a further interest in treating the parolee with basic fairness: fair treatment in parole revocations will enhance the chance of rehabilitation by avoiding reactions to arbitrariness." Id., 484. The parolee's constitutional rights must be viewed within the context of the purposes of parole.[1]

Long before the decision in *Morrissey,* our lower courts established basic minimum requirements for the execution of warrants for parole violators. That was required in part by the severe consequences of so-called "dead time." Of course, it was also recognized that without notice the parolee can be prejudiced by the passage of time in that it may hinder him in obtaining evidence to establish his innocence or to mitigate the violation.[2] Therefore, courts, both

---

[1] "Rather than being an *ad hoc* exercise of clemency, parole is an established variation on imprisonment of convicted criminals. Its purpose is to help individuals reintegrate into society as constructive individuals as soon as they are able, without being confined for the full term of the sentence imposed. It also serves to alleviate the costs to society of keeping an individual in prison. The essence of parole is release from prison, before the completion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence. Under some systems, parole is granted automatically after the service of a certain portion of a prison term. Under others, parole is granted by the discretionary action of a board, which evaluates an array of information about a prisoner and makes a prediction whether he is ready to reintegrate into society." *Morrissey* v. *Brewer,* 408 U.S. 471, 477; see also Wolin, "After Release—The Parolee in Society," 48 St. John's L. Rev. 1.

[2] "In practice, not every violation of parole conditions automatically leads to revocation. Typically, a parolee will be counseled to abide by the conditions of parole, and the parole officer ordinarily does not take steps to have parole revoked unless he thinks that the violations are serious and continuing so as to indicate that the parolee is not adjusting properly and cannot be counted on to avoid antisocial activity." *Morrissey* v. *Brewer,* 408 U.S. 471, 479.

federal and state, have required parole authorities to act with fairness.

The fundamental fairness doctrine requires that the parolee be given notice in a timely manner of the issuance of a parole violation warrant or that the warrant for his arrest be executed within a reasonable period of time after its issuance. Some courts have reached that conclusion on the theory that failure to do so would be a violation of procedural due process guaranteed by the fourteenth amendment to the constitution of the United States. *McCowan* v. *Nelson,* 436 F.2d 758, 760; *Boswell* v. *United States Board of Parole,* 388 F.2d 567, 573; *United States ex rel. Howard* v. *Ragen,* 59 F. Sup. 374, 378;[3] *In re Colin,* 337 Mich. 491. Other courts have reached the same conclusion on the theory that in such cases there was a waiver by the state. *Greene* v. *Michigan Department of Corrections,* 315 F.2d 546, 547; *Ex Parte Bice,* 42 Ala. App. 547, 548; *People* v. *Valle,* 7 Misc. 2d 125, 130 (N.Y.). Still other courts reached that decision on the theory that a warrant not executed within a reasonable time was stale and therefore ineffective. *United States ex rel. Vance* v. *Kenton,* 252 F. Sup. 344, 345; *United States* v. *Gernie,* 228 F. Sup. 329, 337.

Whatever the name of the theory on which the decision is based or its rationale, the silver thread that runs through all the decisions is that a parolee must be afforded fundamental fairness by being given reasonable notice of the issuance of the warrant or by execution of the warrant for his arrest within a reasonable time.[4]  "We think the

---

[3] Contra, *United States ex rel. Meiner* v. *Ragen,* 199 F.2d 798, 800.

[4] It is fundamental that due process requires that timely notice be given in order for there to be an opportunity to be heard at a "meaningful time and in a meaningful manner." *Armstrong* v. *Manzo,* 380 U.S. 545, 552; *Roundhouse Construction Corporation* v. *Telesco Masons Supplies Co.,* 168 Conn. 371, 376.

issuance of a violator warrant triggers a process which, as a matter of fundamental fairness, must be pursued with reasonable diligence and with reasonable dispatch." *Boswell* v. *United States Board of Parole,* supra, 574. It is clear to this court that in view of *Morrissey* v. *Brewer,* 408 U.S. 471, which guarantees procedural due process to the extent of requiring that fundamental fairness, the failure to give notice of the issuance of the warrant or to execute it within a reasonable time is a violation of the fourteenth amendment to the constitution of the United States.

When determining whether notice or execution was accomplished within a reasonable time, each case must be decided on its own merits. *Boswell* v. *United States Board of Parole,* supra, 574. There is no mechanical rule. The relevant considerations that the court must take into account are (1) the time lapse between the issuance of the warrant and its execution, (2) the efforts that the parole officer made to serve the warrant, and (3) the conduct of the parolee in frustrating service of the warrant. *United States ex rel. Vance* v. *Kenton,* supra, 345; *United States* v. *Gernie,* supra, 338.

In the present case the plaintiff called his parole officer shortly after he left DayTop. He told him that he was in Stamford. During the entire period in question, the plaintiff remained in Connecticut and lived in Fairfield County. From 1971 to 1974, he lived in Norwalk, had numerous jobs, lived in an apartment with his girl friend, had at least one written lease in his name for a period of time, and had a telephone listed in his name. The plaintiff lived openly in that area, which is generally considered in or about his home, and maintained contact with his friends and his family. He made no effort to hide or suppress his identity or to frustrate the service of the warrant on him.

On the other hand, the parole officer testified that he and other members of the department never attempted to look for the plaintiff in order to give him notice or execute the warrant,[5] and they never attempted to contact him through his family. There was a complete failure on the part of the department to take any reasonable steps to execute the warrant or to give the parolee notice of its issuance, other than to send a copy of the warrant to the Stamford police during the three-year period. There is no evidence that the Stamford police did anything other than to file the warrant in their drawer.

The defendant cites *Gentry* v. *Warden*, 167 Conn. 639[6] to support his position that it was not the obligation of the state to seek out the plaintiff but the obligation of the plaintiff to report to the parole officer.[7] The defendant, however, misread *Gentry*. The court in that case held that it was a violation of Gentry's probation not to have reported to his

---

[5] This court is aware that parole officers during the period in question supervised up to 100 persons and that by necessity, they were required to establish priorities. As established by the department, the parole officer considered his first obligation to be the supervision of parolees who were entrusted to him, and that was a heavy burden. It is understandable that a low priority was given to apprehending and/or giving notice to those who were accused of violating their parole. Of course, that work load imposed by the state would not, however, excuse the state or justify a violation of the constitutional guarantees which are to be afforded the plaintiff.

[6] *Gentry* concerned probation. The United States Supreme Court in *Gagnon* v. *Scarpelli*, 411 U.S. 778, 782, held that there was no difference between the revocation of parole and the revocation of probation when applying due process standards.

[7] Condition 3 of the parole agreement signed by the plaintiff in this case provided: "You must work steadily, and you must secure the permission of your Parole Officer before changing your residence or your employment, and you must report any change of residence or employment to your Parole Officer within twenty-four hours of such change. It is your responsibility to keep your Parole Officer informed at all times concerning your place of residence, your place of employment, and any arrests, convictions, or investigations by law enforcement officials."

probation officer. This court has no quarrel with that holding. Once the state claims a violation of parole, even though it may be for the failure to report to the parole officer, and wishes to proceed to revoke the parole, it is then, however, under a duty to give notice of the issuance of the warrant or execute it within a reasonable time. In the *Gentry* case it appears that the warrant was in fact executed in an expeditious manner and that the constitutional issue was never raised.

Taking into consideration that no efforts were made to execute the warrant over the three-year period and that the plaintiff was living openly in this state during that period and could have been apprehended by the parole or other state officer acting with reasonable diligence, this court is of the opinion that the delay in this matter was unreasonable. That unreasonable delay in giving notice and in executing the warrant, in light of the dead time penalty, violates the fundamental fairness required by the procedural due process clause of the constitution of the United States.

"If the law were otherwise the results would be offensive to every concept of justice and fair play. A warrant issued ex parte could be held as a sword suspended over the head of a violator indefinitely and could be executed many years later at the mere whim or caprice of the probation authorities. This could occur even were the probationer's address and whereabouts fully known to the probation authorities, or indeed a matter of record in the probation office. The probationer accused of violation would have no knowledge of the issuance of the warrant. Upon his arrest after a lapse of many years proof of innocence of the charge of violation might well be unavailable to him. No matter how minor the charge on which the alleged violator was originally imprisoned or no matter how minor the alleged vio-

lation, the warrant could be kept alive virtually for the life of the probationer by the mere inaction of those charged with the duty of enforcing the law." *United States* v. *Gernie,* supra, 338.

Since this case involves the constitutional rights of the accused, the plaintiff "is not required to show that the constitutional error was harmful; rather, the state must show that it was harmless beyond a reasonable doubt. *Chapman* v. *California,* 386 U.S. 18, 24." *Aillon* v. *State,* 168 Conn. 541, 548; see *Boswell* v. *United States Board of Parole,* 388 F.2d 567, 574 n.10. There was no proof by the state in this case that the deprivation of the plaintiff's constitutional rights of due process was harmless.

The writ of habeas corpus as prayed for by the plaintiff is granted, and the plaintiff is ordered discharged from the custody of the commissioner of corrections as a parole violator forthwith.