STATE OF CONNECTICUT *v.* PATRICK SULLIVAN

APPELLATE SESSION OF THE SUPERIOR COURT

FILE No. 905

Argued April 22—decided December 12, 1980

*F. Mac Buckley,* for the appellant (defendant).

*Scott J. Murphy,* deputy assistant state's attorney, for the appellee (state).

BIELUCH, J. The defendant was convicted after a jury trial of conspiracy to commit larceny in the second degree in violation of General Statutes §§ 53a-123 (a) (2) and 53a-48, conspiracy to commit credit card theft in violation of General Statutes §§ 53a-128c (b) and 53a-48, and illegal use of a credit card in violation of General Statutes §§ 53a-128d (2) and 53a-48. He has appealed from the judgment of conviction, raising six claims of error which basically challenge the sufficiency of the evidence, the admittance of evidence in furtherance of the conspiracy, the jury charge and the competence of trial counsel.

There was sufficient evidence on the record for the jury to have found the following facts: The defendant telephoned Lewis Mazzochi and inquired as to whether Mazzochi could ascertain the credit limit on a certain credit card and where it could be used. Subsequently, the defendant met with Mazzochi and handed him a slip of paper with the name Stan Rosenthal, a Master Charge account number, the name of the issuing bank, and an expiration date. After this meeting, Mazzochi telephoned Trooper Slattery, a state police

officer, and told him what the defendant wanted. Slattery went to Mazzochi's house, and with Mazzochi's permission installed a telephone recording device. He instructed Mazzochi to tape the defendant's further calls. Slattery and Mazzochi arranged with James Cashman, of the J. Robert Barry Stereo Shop, for the police to establish surveillance over the anticipated credit card transaction at his store. Subsequently, the defendant called Mazzochi and was told to go to the J. Robert Barry store and that there was a $600 credit limit on the card. The defendant told Mazzochi that he never writes; that he has someone else do the writing for him. A "writer" is one who issues bad checks or similar false instruments.

That evening two cars pulled up to the J. Robert Barry store. The defendant and a driver were in one car and three men, two of whom were later identified as Constantino and DeBella, were in the second car. The defendant and the three men from the second car entered the stereo store. The four men walked around and talked among themselves for a while. The defendant also talked to Cashman and inquired if everything was all set. When Constantino approached Cashman, he produced the credit card in Stan J. Rosenthal's name and signed a blank Master Charge slip which he entrusted to Cashman, telling him that he would have to check on what merchandise he wanted. The defendant was in a position to observe this transaction. The four men next went to an adjoining liquor store where Constantino purchased some liquor. A short while later Constantino returned to the stereo shop to give Cashman a bottle of wine as a sign of appreciation. After that all four left the area.

The police watched the store the following day, but as no one returned to pick up the merchandise, they contacted Mazzochi and requested that he call the

defendant, which he did. The defendant told him that he would be unable to pick up the merchandise and suggested that Mazzochi call Guy LeBlanc. LeBlanc agree to pick up the merchandise. He did so later that day and drove to a motel. When he began unloading the equipment into his room, the police identified themselves to him. They entered his room and waited there. Shortly thereafter, the defendant arrived. He knocked on LeBlanc's door saying he had come for the car keys. The police then arrested him.

## I

The first claim of error made by the defendant deals with the sufficiency of the evidence. It is claimed that there was insufficient evidence on all three conspiracy counts to submit the case to the jury. The defendant had moved for dismissal after the close of the state's case. The refusal of the trial court to grant such a motion is not properly assignable as error. *State* v. *Williams,* 169 Conn. 322, 336, 363 A.2d 72 (1975); *State* v. *L'Heureux,* 166 Conn. 312, 324, 348 A.2d 578 (1974). The defendant also claims that the court erred in refusing to grant the defendant's motion to set aside the jury verdict.[2] He argues that the evidence was insufficient to support the verdict in two respects. The first is that there was no evidence that the owner or the defendant knew whether the card was lost, mislaid, or stolen. The second is that evidence of the common plan or agreement necessary for a conspiracy was lacking.

The standard for reviewing claims concerning insufficient evidence to support a jury verdict was enunciated in *State* v. *Moye,* 177 Conn. 487, 512, 418 A.2d 870, vacated on other grounds, 444 U.S. 893, 100 S. Ct. 199, 62 L. Ed. 2d 129 (1979), which stated that "the issue is whether the jury could have reasonably concluded, upon the facts established and the

[2] The proper motion would have been a motion for judgment of acquittal. Practice Book, 1978, § 899.

reasonable inferences drawn therefrom, that the cumulative effect of the evidence was sufficient to justify the verdict of guilty beyond a reasonable doubt . . . . In ruling on such a motion, the evidence presented at the trial must be given a construction most favorable to sustaining the jury's verdict."

In the present case, there was sufficient evidence for the jury to make the reasonable inference that the credit card was lost, mislaid or stolen. Rosenthal, the owner of the credit card, testified that he did not know what had happened to his card, and there was enough evidence for the jury to have concluded that Constantino knew he did not have authority to use the card. There was also sufficient evidence for the jury to have concluded that the defendant acted in concert with Constantino and others to commit the illegal acts.

General Statutes § 53a-48 states that a person is guilty of conspiracy "when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy." The essence of the crime of conspiracy is the unlawful combination between two or more people. *State* v. *Hayes,* 127 Conn. 543, 588, 18 A.2d 895 (1941). Circumstantial evidence is permitted to prove this agreement. The fact that a formal agreement existed need not be proved. *State* v. *Ortiz,* 169 Conn. 642, 645, 363 A.2d 1091 (1975); *State* v. *Holmes,* 160 Conn. 140, 149–50, 274 A.2d 153 (1970). In the present case there was sufficient evidence for the jury to find that the defendant asked Mazzochi to ascertain the credit limit on the card, that he went to the stereo shop and a package store with three other men for the purpose of using the credit card, that he instructed LeBlanc to pick up merchandise from the stereo shop, and that he went to LeBlanc's motel room when he knew the mer-

chandise would be there. From this, it was reasonable for the jury to conclude that there was a mutual plan between the defendant, Constantino, LeBlanc, and others for the unauthorized use of the credit card to steal merchandise with it.

## II

The defendant next claims that the court improperly admitted hearsay statements made by Constantino and LeBlanc as evidence in support of the conspiracy without any independent proof of a conspiratorial agreement or plan as a basis for such admission. The test of whether the statement of a co-conspirator is admissible is whether the prosecution has proved the existence of the conspiratorial agreement by a fair preponderance of the evidence independent of the hearsay statements. *United States* v. *Stanchich,* 550 F.2d 1294, 1298 (2d Cir. 1977); *United States* v. *Geaney,* 417 F.2d 1116, 1120 (2d Cir. 1969), cert. denied sub nom., *Lynch* v. *United States,* 397 U.S. 1028, 90A S. Ct. 1276, 25 L. Ed. 2d 539 (1970). Once a conspiracy has been shown to exist, only slight evidence is necessary to draw additional members into the conspiracy. *United States* v. *Marrapese,* 486 F.2d 918, 921 (2d Cir. 1973). Independent of the hearsay statements, there was sufficient evidence to prove that a conspiracy existed for the unauthorized use of the credit card to steal merchandise. The court has the discretion to admit evidence which would be irrelevant unless a connection is later established where the state has represented that it will introduce the connecting evidence subsequently. *United States* v. *Stanchich,* supra; *United States* v. *Geaney,* supra; *State* v. *Hayes,* supra, 596. In this case the defendant has not shown that the order of proof followed at the trial was prejudicial to him. The trial court did not abuse its discretion, and the order of proof will not be reviewed on appeal.

## III

The defendant claims three errors in the jury charge. These are that the court improperly defined the state's informant as a co-conspirator; that the court erred in instructing the jury that it could draw an inference that the missing credit card had been lost, mislaid or stolen; and that the charge on the elements of conspiracy was too general to furnish the jury with the proper standards from which to understand the concept of a criminal conspiracy. The first two claims were not properly preserved at trial in compliance with Practice Book, 1978, § 854. Although mention was made by trial counsel that the court overemphasized the substantive nature of the crimes, we are not bound to consider the third claim since it was not distinctly raised in compliance with Practice Book, 1978, §§ 854, 3063. The defendant maintains that we should consider these claims because they present exceptional circumstances under the doctrine of *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973).

Under the rule enunciated in *State* v. *Evans,* supra, in order for a court to consider a claim that has not been raised at trial it must be shown that one of two exceptional circumstances exist. "The first is . . . where a new constitutional right not readily foreseeable has arisen between the time of trial and appeal . . . . The second 'exceptional circumstance' may arise where the record adequately supports a claim that a litigant has clearly been deprived of a fundamental constitutional right and a fair trial." *State* v. *Evans,* supra, 70. In the present case, the record does not support the claim that exceptional circumstances exist. Therefore, we will not review the claimed errors on the merits.

## IV

The defendant's final claim of error is that he was given inadequate representation of counsel during the

trial. This claim arises from the fact that during the cross-examination of Cashman, trial counsel used the term "mug shots" in referring to the photographs from which Cashman had identified the defendant. In order to establish ineffective assistance of counsel the defendant must prove both that defense counsel's performance was not "within the range of competence displayed by lawyers with ordinary training and skill in the criminal law" and "that the lack of competency contributed to his conviction." *State* v. *Clark,* 170 Conn. 273, 283, 365 A.2d 1167, cert. denied, 425 U.S. 962, 96 S. Ct. 1748, 48 L. Ed. 2d 208 (1976), quoting, *Gentry* v. *Warden,* 167 Conn. 639, 646, 356 A.2d 902 (1975). Even if the term "mug shots" was inappropriate, the fact that an error was made does not of itself render counsel ineffective. *State* v. *Ralls,* 167 Conn. 408, 432, 356 A.2d 147 (1974). Moreover, the defendant has failed to show that the use of the term "mug shots" led to his conviction. Since the identification took place after the defendant was arrested for the charge in the present case, the fact that "mug shots" had been taken would not necessarily lead the jury to infer that the defendant had been arrested previously.

There is no error.

In this opinion SHEA and ASPELL, Js., concurred.