[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The petitioner Michael Johnson brings this petition for a writ of habeas corpus alleging ineffective assistance by his trial counsel, Attorney Patricia Buck Wolf of New Haven. After a jury trial, the petitioner was convicted of two counts of sexual CT Page 4861 assault in the first degree and one count of assault in the first degree. He was sentenced in 1990 to a total effective sentence of twelve years. His conviction was upheld by the Appellate Court. State v. Johnson, 26 Conn. App. 433 (1992).
The petitioner, who was twenty-eight years old at the time of trial, had no criminal record prior to the conviction at issue. He was charged with assaulting and sexually assaulting the cousin of his long-time girlfriend. The complainant claimed that the petitioner assaulted her with a knife in her apartment and that he coerced her into having sexual intercourse with him. The petitioner at all times maintained his innocence. Johnson testified at trial that it was the complainant who attacked him with a kitchen butcher knife. Both the petitioner and the complainant suffered knife wounds in the incident. The complainant's wounds were more serious and she underwent surgery to repair a tendon in her left hand.
There were no witnesses to the alleged assault. Nor was there any medical evidence which corroborated the complainant's claims of sexual assault. Both the complainant and the petitioner testified at trial. Their credibility was the pivotal issue at the trial.
"In order for a criminal defendant to prevail on a constitutional claim of ineffective assistance of counsel, he must establish both (1) deficient performance and (2) actual prejudice." Bunkley v. Commissioner of Correction, 222 Conn. 444,445 (1992), citing Phillips v. Warden, 220 Conn. 112, 132
(1991). The standard for review of a claim of ineffective assistance is the same whether the claim is made under the state or federal constitution. Aillon v. Meachum, 211 Conn. 352, 355
(1989). The appropriate standard is "reasonably effective assistance" of counsel as detailed by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). Quintana v. Warden, 220 Conn. 1, 5 (1991).
The Supreme Court has recognized that "`the right to counsel is the right to the effective assistance of counsel.'" Strickland v. Washington, supra at 686, quoting McMann v. Richardson, 397 U.S. 759, 771, n. 14 (1970). The purpose of requiring effective assistance of counsel is to ensure a fair trial. Id.
The benchmark for judging any claim of CT Page 4862 ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.
Id. To be successful on a claim of ineffective assistance of counsel, the petitioner must show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. Id. at 687. Deficient performance requires a showing that counsel's errors were so serious that the attorney was not functioning "as the `counsel' guaranteed the defendant by the Sixth Amendment." Id. Our Connecticut Supreme Court has stated that "`defense counsel's performance must be reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. The defendant's burden is to show that his counsel's conduct fell below that standard. . .'" State v. Clark, 170 Conn. 273, 283
(1976), quoting Gentry v. Warden, 167 Conn. 639, 645 (1975).
The petitioner has alleged numerous respects in which he contends that his representation by Ms. Wolf was deficient. It is not necessary to examine each of these claims, however, for the petitioner has made the required showing on two claims, either one of which would be a sufficient basis for granting the petition for a writ of habeas corpus. The first contention is that trial counsel failed to conduct an adequate pretrial investigation. At his criminal trial, the petitioner took the witness stand to testify in his own behalf. He testified that he was in the complainant's apartment on the night in question, but that it was the complainant who pulled a knife on him and that both of them suffered cuts when they struggled with the knife. He denied sexually assaulting the plaintiff. He further testified that he went to his girlfriend's apartment after the struggle and she told him to go to the hospital because of his wound. He then went to Yale New Haven Hospital.
On cross-examination, the State's Attorney very effectively impeached the petitioner's direct testimony through the use of the petitioner's hospital record, which contained a prior inconsistent statement by him. He further impeached the petitioner's direct testimony through the testimony of a police officer who interviewed the petitioner at the hospital on the night of the incident in question. At the beginning of his cross-examination, the state's attorney asked the petitioner if CT Page 4863 he told medical personnel that the complainant was his girlfriend. The petitioner denied this. However, the hospital record, which was later admitted into evidence, stated that the petitioner told medical personnel that it was his "girlfriend" who cut his hand with a knife. In addition, the police officer testified on rebuttal that the petitioner told him that while he was "making out" with his "girlfriend", she went "batty" and cut him with a knife. This statement was apparently contained in the police report of the incident. (Trial Transcript, p. 195). On re-direct examination, no effort was made to explain the petitioner's prior inconsistent statements.
Standard 4-4.1 of the American Bar Association Standards for Criminal Justice reads:
Standard 4-4.1. Duty to investigate
 It is the duty of the lawyer to conduct a prompt investigation of the circumstances of the case and to explore all avenues leading to facts relevant to the merits of the case and the penalty in the event of conviction. The investigation should always include efforts to secure information in the possession of the prosecution and law enforcement authorities. . .
(Emphasis added.) In Strickland, the United States Supreme Court stated that standards such as these very ABA Standards are guides which can be used by the courts to determine whether counsel's assistance was reasonably effective. Strickland v. Washington, supra at 688. Failure to conduct an adequate investigation can constitute ineffective assistance of counsel. Siemon v. Stoughton, 184 Conn. 547, 556-7 (1981).
In this case, the evidence clearly shows that Attorney Wolf failed to obtain a copy of the petitioner's hospital record prior to trial. She admitted the same when the State's Attorney subpoenaed the record to court, stating that she had been unsuccessful in her attempts to obtain the hospital record. (Transcript, p. 154). (The petitioner's hospital record was under the name "Michael Moye." The petitioner testified that "Moye" was his mother's name and that there had been a mistake at the hospital, but the State later argued to the jury that the petitioner had intentionally given a false name and false address CT Page 4864 to hospital personnel.)
In her testimony at the hearing on the habeas petition, Ms. Wolf testified that she did not remember if she had hired an investigator for assistance in representing the petitioner at his trial. When asked what she did to investigate the case, she testified that she did not remember any investigation other than going to the scene and interviewing the petitioner's girlfriend, Elaina Brito, at length.
"The decision whether to put the defendant on the stand is a crucial one." Trial Manual for the Defense of Criminal Cases, Vol. II, Section 390, at 2-298, American Law Institute, 1967. Among the factors to be considered is "[w]hether the defendant has made a prior statement which the prosecutor has and with which he can be impeached." Id. at 2-299. Another treatise states, "Your investigator should have turned up all statements made by the defendant to the authorities. The defendant should not be permitted to testify unless he can explain all such statements." Bailey and Rothblatt, Investigation and Preparation of Criminal Cases, 2d Edition, Ch. 7, Section 7.7 at 151.
In permitting the petitioner to take the stand without being aware of his prior statements to the hospital and to the police, trial counsel's performance was below the range of competence of lawyers with ordinary training and skill in criminal law. Ms. Wolf's testimony before this court showed that she remembered very little of the detail of her representation of the petitioner. She did not remember whether she advised the petitioner to testify or not. When petitioner's counsel in this habeas proceeding questioned her about her failure to obtain the petitioner's hospital record before making a recommendation as to whether the petitioner should take the stand, she suggested that reviewing the record was not necessary because although she did not have the records, she did have access to the petitioner and he told her what was done and said at the hospital. Apparently, she still does not understand the significance of her lapse in failing to obtain all of the petitioner's statements as part of her pre-trial investigation.[1]
The deficiency in trial counsel's performance clearly prejudiced the petitioner's defense. Prejudice is the second factor which must be shown in order to establish a claim of ineffective assistance of counsel. "The defendant must show that there is a reasonable probability that, but for counsel's CT Page 4865 unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland v. Washington, supra at 694. As Ms. Wolf herself admitted, credibility was the issue at this trial. The petitioner's direct testimony was ostensibly credible. He was a twenty-eight year old man with no prior criminal record. He was employed and had a stable relationship with his girlfriend, by whom he had fathered three children. There was evidence of animosity between the complainant and her cousin, the petitioner's girlfriend, and the petitioner's testimony that it was the complainant who pulled a knife was consistent with that other evidence. The petitioner's credibility problems arose on cross-examination from his prior inconsistent statements at the hospital and to the police. There is a reasonable probability that the result might have been different if counsel were aware of the petitioner's prior statements. This was a close case which turned an credibility. Counsel's failure to obtain those statements and be aware of them prior to putting the defendant on the stand constituted ineffective assistance of counsel, which undermines confidence in the result.
The petitioner's second claim of ineffective assistance of counsel relates to a plea bargain offer made by the State prior to trial. The State offered the petitioner an eight-year sentence suspended after seven years if he would enter guilty pleas. The defendant rejected the offer and now contends that Ms. Wolf's representation of him in connection with consideration of the offer was ineffective in two respects. First, he claims, Ms. Wolf did not explain to him that the time he would have to serve could be substantially reduced by "good time" which he could earn. His second contention is that Ms. Wolf never explained to him that he could enter guilty pleas under the Alford doctrine, thereby continuing to maintain his innocence.
The petitioner testified that when he discussed the State's offer with Ms. Wolf, she indicated that he would have to serve seven years. Because of this, he declined the offer. As a result of his subsequent conviction and incarceration after trial, the petitioner has learned of the availability of good time. In addition to earning good time at the statutory rate, he is currently earning additional good time for working a seven-day job. He also has been awarded one hundred and twenty days of outstanding meritorious good time. He credibly testified that at the time he considered the State's offer, he had no prior CT Page 4866 experience with the criminal law and he was unaware of the existence of good time. His counsel failed to make him aware of the possible reduction in time to serve because of good time. Likewise, he claimed that Ms. Wolf failed to make him aware of the option of an Alford plea, something of which he was also unaware at the time he considered the State's offer.
Ms. Wolf testified that she remembers discussing with the petitioner an offer of eight years. She testified that she does not remember whether she advised the petitioner to accept the offer, nor whether the petitioner asked her how much time he would have to serve. She had no recollection of whether she advised him of good time credits, but said it is "the kind of thing we always do." She also testified that she did tell him about an Alford plea.
The court credits the petitioner's testimony and finds that trial counsel failed to advise him of good time credits and failed to advise him of the availability of an Alford plea. His testimony is consistent with facts which are not disputed — he had no prior involvement with the criminal system and therefore was not knowledgeable about good time or Alford pleas. The court cannot credit Ms. Wolf's testimony. She remembered so little of her representation of the petitioner that it is difficult to credit those few occasions when she did have a recollection.
Standard 4-5.1 of the American Bar Association Standards for Criminal Justice reads:
Standard 4-5.1 Advising the defendant
 (a) After informing himself or herself fully on the facts and the law, the lawyer should advise the accused with complete candor concerning all aspects of the case, including a candid estimate of the probable outcome.
The Commentary to this Standard further provides, "[t]he decision to plead guilty can be an intelligent one only if the defendant has been advised fully as to his or her rights and as to the probable outcome of alternative choices."
In an appeal from a trial court decision denying the defendant's motion to withdraw his guilty plea, our Supreme Court stated, "No doubt of great significance was his possible release CT Page 4867 date if imprisoned. . . It is not unreasonable to infer that the dominant consideration . . . was the amount of time the defendant would have to serve if he pleaded guilty. . . ." State v. Collins,207 Conn. 590, 596 (1988). "The length of time a defendant may have to spend in prison is clearly crucial to a decision of whether or not to plead guilty." State v. Collins, 176 Conn. 7,9-10 (1978). On the facts of this case, where the petitioner was entirely unfamiliar with court procedures concerning guilty pleas, sentencing and sentencing credits, the performance of counsel in failing to advise him of the availability of an Alford plea and of good time to reduce the time to be served was below the range of competence of lawyers with ordinary training and skill in criminal law.
The deficient performance by counsel in failing to advise the petitioner properly with regard to the State's offer clearly was prejudicial to the petitioner. Believing that he would actually have to serve seven years of a seven year sentence, he declined the state's offer and went to trial. As a result of his conviction after trial, he is now serving a twelve year sentence. He credibly testified that he would have accepted the State's offer if he had known about the good time credits and if he could still maintain his innocence. He testified that he would have done so in order to protect his children and to make peace with Ms. Brito's family.
Judgment is entered granting the writ of habeas corpus and ordering a new trial for the petitioner.
Christine S. Vertefeuille, Judge