[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Petitioner commenced this matter by filing a Petition for Writ of Habeus Corpus alleging ineffective assistance of counsel and challenging his incarceration as a result of two sets of convictions rendered in the Judicial District of Fairfield. In the first set, petitioner pled guilty on May 19, 1992 to one count each of sale of CT Page 7497 narcotics, weapon in a motor vehicle, larceny in the second degree and failure to appear in the first degree in violation of Connecticut General Statutes Sections 21a-277(a), 29-38, 53a-123, and 53a-172(a), respectively. For these convictions, the defendant was sentenced by the Honorable John Ronan to a total effective sentence of twelve (12) years incarceration, suspended after six (6) years and nine (9) months. This first set of convict ions is referred to as the "Part A" convictions, a designation likewise adopted by counsel for the parties.
On October 28, 1993, the defendant pled guilty to the second set of convictions, referred to as the "Part B" convictions by the court and by counsel, before the Honorable Robert Flanagan. These convictions consist of three counts of illegal sale of narcotics, two counts of failure to appear in the first degree and two counts of failure to appear in the second degree in violation of Connecticut General Statutes Sections 21a-277(a), 53a-172 and53a-173, respectively. The court sentenced the petitioner to a total effective sentence of nine (9) years incarceration with all sentences to run concurrently with the sentence defendant petitioner was serving on the "Part A" convictions.
The defendant did not appeal from either set of convictions. The defendant never moved to withdraw either his Part A or his Part pleas until he filed a pro se Petition for Writ of Habeus Corpus on April 28, 1994. After the court appointed counsel for the defendant, an Amended Petition was filed by counsel on December 1, 1994. Among other claims in said amended petition is an assertion that the petitioner did not deliberately bypass the remedy of a direct appeal, which claim was denied by the respondent when respondent filed its return on January 3, 1995. A hearing was held on the petition before the undersigned on February 9, 1995. Post trial briefs were filed, the last on March 10, 1995.
In Count One of his amended petition, petitioner alleges that his incarceration is illegal:
 because his guilty pleas in both Part A and Part B were not entered knowingly, intelligently and voluntarily; and that his convictions and sentences in both Part A and Part B were obtained through unfulfilled promises made by the prosecution.
It is further alleged in Count One that petitioner relied to his detriment in his Part A and Part B cases on the promise of a CT Page 7498 concurrent sentence in both courts.
In Count Two of his amended petition, petitioner alleges that his incarceration is illegal in that his conviction and sentence in Part B was obtained through an unfulfilled promise made by the prosecution. It is further alleged in Count Two that the petitioner relied to his detriment on the promise of a concurrent sentence in Part B.
In Counts Three of his amended petition, petitioner alleges that his incarceration is illegal in that his convictions and sentences in both Part A and Part B were obtained as a result of ineffective assistance of counsel because counsel for the petitioner in Part A did not cause the promise of a concurrent sentence in Part B to be memorialized and did not cause the promise of a concurrent sentence in Part B to be made in an enforceable manner.
In Count Four of his amended petition, petitioner alleges that his counsel, in Part B rendered ineffective assistance in that he did not cause the promise of a concurrent sentence in Part B to be memorialized and did not cause the promise of a concurrent sentence in Part B to be made in an enforceable manner and that he rendered deficient advice on whether to plead guilty in Part B and that he failed to conduct an adequate investigation of the law and the facts related to the charges.
The real thrust of petitioner's claim appears to be that his attorney's actions or omissions misled him into believing that the entire time he spent incarcerated following his convictions in Part A would apply against any sentence he eventually received in Part B in addition to his belief that the sentence in Part B would be concurrent with the sentence in Part A.
In his Return to Amended Complaint, the Respondent has, in effect, denied the material claims of the Petitioner including the claim that his pleas were not entered knowingly, intelligently and voluntarily, that the sentence in Part B was not concurrent to the sentence in Part A, and that his incarceration is illegal in that his conviction and sentence in both Part A and Part B was obtained as a result of ineffective assistance of counsel.
This court has reviewed the various Exhibits in this Habeus hearing including the transcript of the proceedings in the Part A and Part B Courts with respect to the guilty pleas, the canvasses of said pleas by each of the above referred to judges and the sentences CT Page 7499 imposed upon the defendant in said courts. This court has heard the the testimony of the petitioner and his former counsel, Dante Gallucci, against whom the claim of ineffective assistance of counsel has been made.
This court finds as follows;
 1) The sentence in the Part B Court was concurrent with the sentence in the Part A Court.
 2) The canvasses conducted by the above referred to judges in their respective courts clearly establishes that the pleas were entered knowingly, intelligently and voluntarily.
A review of the transcript of the canvass of the guilty please in the Part A proceedings reveals the following:
Pages 4, 5
THE COURT: All right. The State's recommendation?
MR. PALUMBO: I believe the State is recommending 12 after 8 Your Honor.
MR. GALLUCCI: Your Honor, the Court had indicated — the Court offer was 12 after 7.
THE COURT: Right. It's going to be 12 years suspended after 6 on the possession with intent, the Larceny 2, and the weapon in the motor vehicle; and 1 year consecutive on the failure to appear. There will be a right to argue for whatever on the first file.
MR. GALLUCCI: Thank you Your Honor.
THE COURT: Anything else you want to add, Mr. Gallucci?
MR. GALLUCCI: No, I'm just requesting a P.S.I at my client's request and, uh, I just want to state for the record that we understand that there are cases still pending at the Golden Hill Street courthouse that still have to be resolved over there.
Uh, however, my indication from the state's attorney's office is that they didn't necessarily have objection to those concurrent. Of course, that has to be done at the Golden Hill Street courthouse. CT Page 7500
Page 10, 11:
THE COURT: Now you do have some cases pending in the G.A., and do you understand that these cases are not involved here. That's something that you've got to work out in that court. Do you understand that?
MR. McKOY: Yes.
THE COURT: Aside from the cases you know about, the ones that are down here that we've mentioned and the. G.A. court, do you have any other cases pending that you're aware of any other places?
MR. McKOY: No sir.
THE COURT: And do you understand Mr. McKoy once I accept your pleas you will not have the right to change your mind? You can't come back to court later on and indicate you'd like to plead not guilty again and have a trial because you won't be allowed to do that.
After today the only way you'd have a right to withdraw this plea would be with permission of the court for a legal reason; but a legal reason does not mean just changing your mind. Do you understand?
MR. McKOY: Yes sir.
THE COURT: Now do you have any questions about anything I've said to you or anything about the cases themselves you would like to ask the court about?
MR. McKOY: No sir.
THE COURT: Either counsel. Any reason why the pleas should not enter?
MR. PALUMBO: No Your Honor.
MR. GALLUCCI: No Your Honor.
THE COURT: The Court finds the pleas entered, knowingly, intelligently, voluntarily with an understanding of the charges; their possible penalties. CT Page 7501
I do find a factual basis for the pleas. They are accepted; recorded. Findings of guilty. June 26th for sentencing. P.S.I. is ordered.
A review of the transcript of the guilty pleas in the Part B proceedings after the defendant pleaded guilty, reveals the following:
Pages 5, 6, 7:
MR: HARRY: — — — — State's recommendation on the sale counts, each one of the sale counts, nine years to serve. Failure to appears, five year to serve, all to run- —
THE COURT: Wait a minute. Failure to appear, five. Okay.
MR. HARRY: And the sale counts nine years each, all to run concurrent. Total effective sentence is nine years.
THE COURT: Okay.
MR. HARRY: And to stay it for one week.
THE COURT: — — — — Counsel anything?
MR. GALLUCCI: Just would add, your Honor, that this case has been pre tried several times. This goes back quite a ways. This is an agreement that was reached after some period of negotiation. And my understanding is that my client has agreed to that. That's all I want to add at this time.
MR. HARRY: And this is also, for the record so it's clear, this is running concurrent — all sentences are to run concurrent with one another and concurrent with the his Part A sentences.
MR. McKOY: So the time that I got in don't count.
MR. HARRY: Right. But, its running concurrent, you're not going to — it's all running together.
THE COURT: Consecutive means you add it on to the other sentence, in other words, if you got five years over there, say, and I gave you a consecutive sentence here of five years, that means you'd be doing ten. Whereas, if you get two, three, four, five or CT Page 7502 six, over there, or say whatever, whatever I imposed here it's concurrent. It doesn't add to that. You know what I mean?
MR. McKOY: Okay, your Honor. — — —
Page 8:
THE COURT: — — — Mr. McKoy, what I'm doing now, I'm going to canvass you with respect to your pleas here. You just have pled guilty to one count of Sale of Narcotics, a second count of Sale of Narcotics, a Failure to Appear One, and another Sale of Narcotics, another Failure to Appear One, and two Failure To Appear Twos. You understand that when you do that, you give up your right to continue to plead not guilty, and you give up your right to have a trial. You understand those things, right?
MR. McKOY: Yes.
THE COURT: And you're pleading voluntarily? Nobody's forced you to do it, nobody's threatened you if you didn't do it, correct?
MR. McKOY: Yes.
THE COURT: You had an opportunity to discuss these matters with your lawyer. You understand now if we took all of your files here and if you went to trial on them and if you were to lose them, you could potentially be facing substantially more of a penalty than your lawyer's been able to bargain for you. You understand that?
MR. McKOY: Yes.
THE COURT: You satisfied with the job your lawyer's done for you?
MR. McKOY: Yes.
THE COURT: Okay. Any reason why I shouldn't accept the plea, counsel?
MR. GALLUCCI: No, your Honor.
MR. HARRY: No, your Honor. — — — — —
CT Page 7503 — — —
THE COURT: All right, the Court finds the defendant's pleas are voluntarily made, understandingly made with advice of competent counsel and a factual basis for the plea. The pleas are accepted by the Court. Sale of Narcotics guilty plea, the defendant's committed to the Commissioner of Corrections for a period of nine years to serve, that's to run concurrent with the Part A matter. The second sale, guilty plea to that, five years to serve to run concurrent with the previously imposed sentence. Failure to Appear One, guilty plea to that, five years to serve to run concurrent with the previously imposed sentence. The next Sale, nine years to serve to run concurrent with the previously imposed sentence. Failure To Appear One, guilty plea to that — — — — Five years to run concurrent with the previously imposed sentence. On Failure to Appear Two, a guilty plea to that, unconditional discharge. Another Failure To Appear Two, guilty plea to that, unconditional discharge. Total effective sentence, nine years to serve to run concurrent with the present sentence over in Part A. Any matters I did not discuss are nolled. — — — — —
Based on the transcripts referred to above and the testimony of the petitioner and Attorney Gallucci in this Habeus proceeding, this court finds no merit to the petitioner's claim that his guilty pleas in both Part A and Part B were not entered knowingly, intelligently and voluntarily and/or his convictions and sentences in Part A and Part B were obtained through unfulfilled promises made by the prosecution and or that the sentences were not concurrent and/or there was ineffective assistance of counsel in that regard.
The petitioner further claims that there was ineffective assistance of counsel in that he did not arrange to have the cases in Part B heard promptly after the proceeding in Part A. so that there would be no gap in serving time on the Part B convictions. The petitioner further claims that there was ineffective assistance of counsel in that he rendered deficient advice on whether to plead guilty in Part B and that he failed to conduct an adequate investigation of the law and the facts related to the charges.
"`A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction . . . has two components. First the defendant must show that counsel's performance was deficient . . . . Second, the defendant must show that the deficient performance prejudiced the defense. . . Unless a defendant makes both showings, it cannot be said that the CT Page 7504 conviction. . . resulted from a breakdown in the adversary process that renders the results unreliable.' Strickland v. Washington,466 U.S. 668, 687, reh. denied, 467 U.S. 1267 (1984) Aillon v. Meachum,211 Conn. 352, 357 (1989). . .
"Establishing that counsel's performance was deficient `requires that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.' Strickland v. Washington, supra, 687. To demonstrate this `the defendant must show that counsel's representation fell below an objective standard of reasonableness.' Id., 687, 688. In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances.' Id., 688. `Judicial scrutiny of counsel's performance must be highly deferential,' and courts `must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy.'" Id., 689, quoting Michel v. Louisiana, 350 U.S. 91
(1955), reh. denied, 350 U.S. 955 (1956). Williams v. Warden,217 Conn. 419, 422, 423.
Attorney Gallucci testified as follows:
That at the time petitioner pled guilty in Part A, there was no agreement with the State regarding the disposition of McKoy's Part B charges and that McKoy knew that; that he met with McKoy before the Part B. proceeding and explained to him that the time he had already served following imposition of the Part A sentence was "dead time" as to his part B charges and that McKoy knew that.
Attorney Gallucci further testified that the State's evidence with regard to both the Part A and Part B charges was formidable. In the Part A case, petitioner had been arrested while in possession of a stolen vehicle, a loaded gun and 25 vials of cocaine. In Part B, petitioner had been arrested following extensive police surveillance of several drug transactions. He further testified that the police surveillance reports, which he read, were among the most detailed and extensive reports he had ever seen; that, in fact, the petitioner admitted his guilt; that after reviewing the State's evidence, he did not believe there were any viable legal defenses or challenges to be raised; that, therefore, he focused on securing the most favorable disposition he could for his client and that the petitioner concurred in this strategy. CT Page 7505
At the habeus hearing, Attorney Gallucci recounted in detail the course of negotiations in both cases. He stated that when negotiation began, the State's original offer was 15 years to serve on both the Part A and Part B charges. Petitioner did not accept the original offer, and the Part A case was scheduled for trial. On the date set to begin trial, petitioner failed to appear. Eventually negotiations resumed with the State on his Part A charges. However, the State was no longer willing to resolve the Part A charges together with the Part B charges, and at the time petitioner pled in Part A, there was no agreement with regard to the disposition of his Part B. cases.
Attorney Gallucci stated that when he returned to Part B to negotiate with regard to petitioner's outstanding charges, a different prosecutor had taken over the file. The new prosecutor offered the petitioner 15 years consecutive to the sentence petitioner was then serving. Gallucci advised his client against accepting the 15 years consecutive and continued to work to reach a more favorable disposition. Finally after receiving permission from the Part B criminal court judge, he pretried the case before the chief criminal court judge in the judicial district, and was able to secure an agreement to a total effective sentence of nine years concurrent with petitioner's then existing sentence.
Attorney testified that in his professional opinion, this was the most favorable disposition could expect to receive; that he advised his client to accept it, and that his client agreed; that prior to the Part B plea, he explained the effect of the sentence to the petitioner in detail, illustrating in writing how the two sentences would run, and that by the end of the conference, he was satisfied that the petitioner fully understood the effect of the sentence.
Attorney Gallucci conceded that the delay between petitioner's Part A and Part B pleas was unfortunate in that it resulted in "dead time." However, the only other alternative would have been for the petitioner to accept the offer of 15 years consecutive, a far less favorable disposition, or go to trial in a case the State was almost certainly going to win. Under the circumstances, therefore, Attorney Gallucci's actions and advice were reasonable and represented sound legal stragedy. Petitioner has failed to establish that Attorney Gallucci's performance was not "reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law." Gentry v.CT Page 7506Warden, 167 Conn. 639, 646 (1975).
In view of the credible testimony of Attorney Gallucci regarding his discussions with the petitioner and petitioner's acceptance of the bargained-for disposition, and the objective evidence indicating this was a highly favorable disposition, petitioner's testimony that if he had realized the effect of the sentence, he would not have pled guilty dooes [does] not appear to this court to be credible.
In addition, a review of the facts adduced at the hearing reveals that the delay in sentencing between the Part A and Part B guilty pleas actually was of benefit to the petitioner and that petitioner received a more favorable disposition than if he had accepted the State's original offer of 15 years to serve on both sets of charges. Petitioner benefited greatly from Attorney Gallucci's skillful representation.
Accordingly, the Petition is dismissed.
MORTON I. RIEFBERG JUDGE OF THE SUPERIOR COURT