STATE OF CONNECTICUT *v.* KEITH WHITE

HOUSE, C. J., COTTER, LOISELLE, LONGO and SPEZIALE, Js.

Argued May 8—decision released July 29, 1975

*John R. Williams,* special public defender, for the appellant (defendant).

*William F. Gallagher,* special assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, and *Jerrold H. Barnett,* assistant state's attorney, for the appellee (state).

COTTER, J. The defendant, after a plea of guilty, was convicted of the crime of burglary with violence. Thereafter, on January 14, 1972, he was sentenced to the Correctional Institution, Cheshire, for an indefinite term, execution suspended, and placed on probation for three years. As a condition of his probation, the court ordered that he remain at Daytop, Inc., hereinafter Daytop, for inpatient drug treatment until released. At the time of sentencing, the court (*O'Sullivan, J.*), in the presence of (1) the defendant, (2) his attorney, who also represents him on appeal in this case as special public defender, (3) his mother, (4) a representative from Daytop, and (5) the assistant state's attorney, stated in pertinent part: "I'm glad to see that you are taking, at least, the first step towards correcting the situation which you have gotten yourself involved in. I know Daytop screens people and won't accept anybody unless they are motivated to get away from their drug problems. So, I certainly am one to help you out, if I possibly can. Therefore, so that you'll have this matter over your head so that you will realize unless you keep going along with the program that Cheshire will be waiting for you, I will sentence you to Cheshire for an indefinite term, I'll suspend execution . . . ,

putting you on probation for three years, on condition that you be admitted to Daytop—as you have been—and stay in inpatient treatment there until whatever program they lay out for you has been completed."

On the date of sentencing the defendant, as the court stated, was already in a facility operated by Daytop, located in Waterbury, prior thereto having been released to its custody by the court (*O'Sullivan, J.*). The sentence recommended to the court for its consideration had been agreed to by the state and by the defendant. At the time of sentencing, Attorney Williams, who likewise represented the defendant at that time, stated that Daytop required a stay in its facility for a minimum period of eighteen months and a maximum of twenty-four months; that the defendant had a problem with drugs; and that his commission of the crime was a situation in which he was trying to get money for drugs. Attorney Williams informed the court that in his judgment the defendant was very bright and that, after the defendant has had a chance to get his mind together through the program they have at Daytop, the defendant was someone who would be able to make a substantial contribution to the community. At that time the defendant's attorney also presented to the court a letter from Samuel Redwine, the resident director at Daytop, which indicated that the facility wished to keep the defendant in its program. Attorney Williams urged the court to accept the sentence that had been recommended and, thereafter, the defendant and his mother, in response to a question by the court, indicated they had nothing to add.

Daytop is a corporation which has as its purpose the rehabilitation of drug-dependent people; it is

a twenty-four hour per day, structured, live-in environment and includes group therapy, education and a restructuring of a person's social life. Its program is from eighteen to twenty-four months; eighteen months is the minimum time, and it accepts as participants in its program people who apply to stay for the prescribed period of time during which the corporation's personnel work with and rehabilitate them. One of the purposes of Daytop's program is to place the participants in jobs in the community so that they will be able to earn salaries and become self-sufficient; and before participants are placed on such jobs they are not permitted to leave the particular residential facility without the consent of the staff.

Only twelve days after the date of sentencing, however, on January 26, 1972, an application for an arrest warrant for violation of probation, accompanied by an affidavit subscribed and sworn to by Raymond Bykowski, probation officer, was made to the Superior Court in New Haven County. The affidavit, in addition to a recitation of the sentence and the special condition of probation, stated that notification had been received from Daytop that the defendant had left the treatment facility without permission on January 22, 1972, and that it would appear that the defendant was in violation of the specially imposed condition of probation; and requested a warrant pursuant to § 53a-32 of the General Statutes. Thereafter, on January 27, 1972, the court found probable cause for the issuance of the warrant. The defendant was arrested pursuant to the warrant on May 10, 1973. When he was presented before the court on May 31, 1973, he was represented by Attorney Williams. William F.

Hayes, Jr., district supervisor, fourth district, department of adult probation, and the assistant state's attorney were likewise present in court.

At the court hearing on revocation (*Saden, J.*) held on May 31, 1973, Attorney Williams insisted that the mandate of *Gagnon* v. *Scarpelli,* 411 U.S. 778, 93 S. Ct. 1756, 36 L. Ed. 2d 656, decided May 14, 1973, seventeen days earlier, must be followed. The defendant's attorney did not specifically claim that the court should proceed to conduct a revocation hearing at that time to determine whether the defendant had violated the terms of his probation, and, if so, what the disposition of his case should be pursuant to § 53a-32 of the General Statutes. In the matter of a revocation of probation, it has been the Connecticut practice to conduct a hearing before a court or judge. However, it was noted by the court at the May 31, 1973 hearing that *Gagnon* provided for a two-step procedure whereby preliminary and final revocation hearings should be held. Until that decision no standard procedure had been followed or established in Connecticut for two hearings on an alleged probation violation. Consequently, because of the newness of that decision, the court decided, following counsel's insistence on "those rights" under *Gagnon,* to continue the probation revocation hearing, which it was ready to start, until after a preliminary hearing had been held. Thereupon, the court informed William F. Hayes, Jr., district supervisor, who was present in court, that a preliminary hearing within the probation department should be conducted by one of its personnel who had not had any contact with the defendant's case, and that a hearing officer should be appointed who would make the decision whether there was a basis (probable cause) for presenting

the case to the court for a revocation of the defend-
ant's probation. Thereafter, a preliminary hearing
was conducted at the Community Correctional
Center, New Haven, on June 11, 1973, to determine
whether the defendant had violated any of the con-
ditions of his probation. In addition to the defend-
ant, Raymond Bykowski, probation officer, George
Griffin, recorder, and William F. Hayes, Jr., district
supervisor, were present. Bykowski, the defend-
ant's probation officer, who also prepared the orig-
inal presentence report, testified, and department
records were referred to at the preliminary hearing.
The defendant probationer refused to participate
and produce evidence without counsel being present.
The hearing officer decided that there was sufficient
reason to hold the defendant for the charge of vio-
lation of probation because the special condition
imposed by the court at the time of sentencing that
he enter Daytop facilities for inpatient treatment
and remain at Daytop until released was not com-
plied with, since he left the facilities on January 24,
1972, without Daytop's permission. After the proba-
tion department's preliminary hearing, a second
or final hearing on revocation was held in court on
June 22, 1973, to determine whether the defendant's
probation should be revoked pursuant to § 53a-32
of the General Statutes.

At the court hearing on revocation of probation,
Francis P. Petrillo, senior coordinator and drug
rehabilitation counselor of Daytop, testified that
the defendant arrived at Daytop's Waterbury
facility in the beginning of January, 1972, and that
he remembered the defendant and knew that he
left Daytop's program without permission in
January of 1972. Petrillo's testimony in court was
not based upon his review of the defendant's

records, which were not offered for introduction into evidence nor used or produced by Petrillo during his testimony. Bykowski testified that the defendant was one of the persons assigned to him as a probation officer; that he knew that the defendant was at Daytop as a result of the court sentence on January 14, 1972, and that either four or five days after the sentence he was notified that the defendant had left the program at Daytop. He received this information by telephone and by means of a letter from Samuel Redwine, resident director, that the defendant left Daytop without the consent of the staff on January 21, 1972. After completion of the full hearing the court revoked the defendant's probation.

## I

The defendant claims the court erred at the final revocation hearing in admitting Petrillo's testimony and the Redwine letter in violation of General Statutes §§ 52-146d—52-146j and 21 U.S.C. § 1175,[1] both

[1] "[General Statutes] Sec. 52-146d. PRIVILEGED COMMUNICATIONS BETWEEN PSYCHIATRIST AND PATIENT. As used in sections 52-146d to 52-146j, inclusive, 'patient' means a person who, communicates with, or is treated by, a psychiatrist in diagnosis or treatment; 'psychiatrist' means a person licensed to practice medicine who devotes a substantial portion of his time to the practice of psychiatry, or a person reasonably believed by the patient to be so qualified; 'authorized representative' means a person empowered by the patient to assert the confidentiality of communications or records as established by sections 52-146d to 52-146j, inclusive, or, if the patient is incompetent to assert or waive his privileges hereunder, a guardian or conservator who has previously been appointed or is appointed to act in place of the patient, except that the nearest relative of such a patient may maintain the confidentiality until such time as such guardian or conservator has been appointed, or, if the patient is deceased, his personal representative or next of kin; 'consent' means consent given in writing by the patient or his authorized representative; 'communications and records' means all communications relating to diagnosis or treatment of the patient's mental condition between patient and psychiatrist, or between members of the patient's

of which concern the privilege of confidentiality between patient and doctor, and argues that these statutes preclude the use of knowledge obtained as a result of that relationship. We cannot agree.

A

General Statutes § 53a-30 (a) (2), which concerns conditions of probation and conditional discharge, provides that the court may, as a condition of the sentence, order the defendant to "undergo medical or psychiatric treatment and remain in a specified institution, when required for that purpose." In addition, part III of chapter 359 of the General Statutes (§§ 19-486 to 19-504) authorizes the con-

family and psychiatrist, or between any of the foregoing and such persons who participate under the supervision of the psychiatrist in the accomplishment of the objectives of diagnosis and treatment, or records thereof, oral or written, wherever made, including communications and records which occur in or are prepared at a mental health facility. 'Mental health facility' includes any hospital, clinic, ward, psychiatrist's office or other facility, public or private, which provides inpatient or outpatient service, in whole or in part, relating to the diagnosis or treatment of a patient's mental condition. Communications and records 'identify' a patient and such communications and records are 'identifiable' if, in connection therewith (1) names or other descriptive data are used from which a person acquainted with the patient might reasonably recognize such patient as the person referred to or (2) codes or numbers in general use outside the mental health facility which prepared such communications and records are used."

"Sec. 52-146e. DISCLOSURE OF COMMUNICATIONS. (a) All communications and records as defined in section 52-146d shall be confidential and shall be subject to the provisions of sections 52-146d to 52-146j, inclusive. Any consent given hereunder shall specify to what person or agency the information is to be disclosed and to what use it will be put. Each patient shall be informed that refusal to grant consent will in no way jeopardize his right to obtain present or future treatment except where disclosure of such communications and records is necessary for treatment of such patient. The patient or his authorized representative may withdraw any consent given under the provisions of this section at any future time in a writing addressed to the person or office in which the original consent was

finement and treatment of a drug-dependent person such as the defendant. Specifically, § 19-498 (a) permits inpatient treatment and commitment to a facility such as Daytop, which has as its purpose the rehabilitation of drug-dependent people. Cf. *Robinson* v. *California*, 370 U.S. 660, 665, 82 S. Ct. 1417, 8 L. Ed. 2d 758. Obviously, in the course of the rehabilitation, the patient will confer with physicians and their aides, and records of his treatment and progress will be made. This continual supervision, confinement and treatment avoids penal institutional incarceration, to the advantage of the probationer. Because the patient-defendant is being treated pursuant to a court order, the statutes

filed. Withdrawal of consent shall in no way affect communications or records disclosed prior to notice of such withdrawal. (b) Except as hereinafter provided, no person shall disclose or transmit any of the foregoing communications or records where the patient is identifiable, or the substance or any part or parts or any resume thereof, to any person, any corporation or any governmental agency, municipal, state or federal, without the consent of the patient or his authorized representative."

Title 21 U.S. Code (Sup. II, 1972): "§ 1175. CONFIDENTIALITY OF PATIENT RECORDS. (a) Disclosure authorization. Records of the identity, diagnosis, prognosis, or treatment of any patient which are maintained in connection with the performance of any drug abuse prevention function authorized or assisted under any provision of this Act or any Act amended by this Act shall be confidential and may be disclosed only for the purposes and under the circumstances expressly authorized under subsection (b) of this section. (b) . . . (2) If the patient, with respect to whom any given record referred to in subsection (a) of this section is maintained, does not give his written consent, the content of such record may be disclosed as follows: . . . (C) If authorized by an appropriate order of a court of competent jurisdiction granted after application showing good cause therefor. In assessing good cause the court shall weigh the public interest and the need for disclosure against the injury to the patient, to the physician-patient relationship, and to the treatment services. Upon the granting of such order, the court, in determining the extent to which any disclosure of all or any part of any record is necessary, shall impose appropriate safeguards against unauthorized disclosure. . . ."

require that he must comply with the appropriate probation laws and regulations. General Statutes § 19-500 (a). For instance, § 53a-32 (b) provides that probation cannot be revoked "except upon consideration of the *whole record* and unless such violation is established by reliable and probative evidence [emphasis added]"; and such records of his treatment would have to be available to the committing court in the event the commission on adult probation pursuant to statute feels the drug-dependent person has abstained from the use of controlled drugs for the statutory period and recommends to the court the termination of probation and discharge. General Statutes § 19-500 (b). Under § 19-492 (c): "No physician or staff member of any facility for the treatment and rehabilitation of drug-dependent persons pursuant to this chapter who submits any report or files any petition authorized by this chapter shall be held to have violated any otherwise confidential relationship." Thus records relating to drug-dependency treatment are available to the sentencing court while other confidential communications may be protected. A probationer, consequently, who is committed to Daytop receives medical treatment with the knowledge that he is subject to the statutory scheme of probation and with the expectation that his treatment records may be submitted to the committing court either when treatment is completed or if there is a violation of probation. Accordingly, §§ 52-146d—52-146j establish a general privilege, while § 19-492 (c) specifies instances, such as we have here, in which such a privilege may not be invoked. So construed, they are not in conflict. "[S]pecific terms covering the given subject matter will prevail over general language of the same or

another statute which might otherwise prove controlling." *Meriden* v. *Board of Tax Review,* 161 Conn. 396, 401, 288 A.2d 435. See also *Kokoszka* v. *Belford,* 417 U.S. 642, 650, 94 S. Ct. 2431, 41 L. Ed. 2d 374; 73 Am. Jur. 2d, Statutes, § 257. Statutes which appear to be repugnant or allegedly inconsistent are to be accorded a concurrent effect if by a fair interpretation a reasonable field of operation for both can be found without destroying or perverting their evident meaning and intent; and it is presumed that the legislature intended existing relevant statutes be read so as to make one consistent body of law. *Cicala* v. *Administrator,* 161 Conn. 362, 365, 288 A.2d 66.

We find there is "a reasonable field of operation for each statute which does not impinge on the domain of the other; consequently, it is the duty of the court to give them concurrent effect." *Busko* v. *DeFilippo,* 162 Conn. 462, 471, 294 A.2d 510; see 73 Am. Jur. 2d, Statutes, § 253.

Thus, §§ 52-146d—52-146j, which seem to create a broad psychiatrist-patient privilege, are not applicable under the circumstances of this case. The statutes are silent on the issue of a privilege for probationers such as the defendant, and thus they are not inconsistent with §§ 19-486 to 19-504. Secondly, a patient may claim the privilege of confidentiality between himself and his physician only if he had a justified expectation that his communications would not be publicly disclosed; the purpose of the privilege is to give the patient an incentive to make full disclosure to a physician in order to obtain effective treatment free from the embarrassment and invasion of privacy which could result

from a doctor's testimony. McCormick, Evidence (2d Ed.) § 98, p. 213. Such a motivation would be lacking in a case such as this, since a probationer committed because of drug dependency has the incentive to make full disclosure because effective treatment would assure not only his recovery but also his freedom. In addition, his commitment to an institution and the reasons for it are a matter of record, and thus he does not sustain the same stigma or embarrassment an ordinary patient might undergo if he made the disclosures to his doctor with an expectation of confidentiality. Under these circumstances, the defendant would have no expectation of confidentiality since he admitted in open court that he was drug dependent; was publicly ordered to Daytop for treatment; and knew that court revocation awaited him in the event he failed to comply with the conditions of probation.

## B

Section 1175 of 21 U.S. Code, effective March 21, 1972, is not applicable to the January 21, 1972 letter from Redwine to Bykowski. That statute, although much of the foregoing discussion concerning the state statute could be also relevant herein, is not applied retroactively since the regulation makes it clear that it applies only "to records or any part thereof made on or after March 21, 1972, of the identity, diagnosis, prognosis, or treatment of any patient which are maintained in connection with the performance of any drug abuse prevention function authorized or assisted under the . . . [Drug Abuse Office and Treatment Act of 1972]." 21 C.F.R. § 401.02 (a) (1973). Since the Redwine letter was "made" two months before the statute became effective, it was properly received in evi-

dence in the final revocation proceeding here. It is also significant that on January 14, 1972, Attorney Williams, representing the defendant at the time of sentencing, presented to the court a letter from Samuel Redwine, resident director, to the effect that Daytop wished to keep the defendant in its program. Confidentiality was not urged on the court at that time. On the contrary, the defendant used Redwine's letter to his advantage.

Moreover, even if § 1175 were applicable, the Petrillo testimony was given without recourse to any record and the Redwine letter is not a "record" as contemplated under the statute which refers to "[r]ecords of the identity, diagnosis, prognosis, or treatment of any patient which are maintained in connection with the performance of any drug abuse prevention function authorized or assisted under any provision of this Act."

Petrillo testified that his testimony was not based upon a review of the probationer's records. He was not asked any particular questions requiring information from the records, nor were these records produced or offered for introduction into evidence in court. He testified directly that he had seen the defendant at Daytop and that the defendant left. Daytop without permission. A counselor's direct personal observations of the defendant's absence in violation of the terms of his probation are not a "record . . . maintained in connection with the performance of any drug abuse prevention function." Similarly, when that observation is put on paper and sent to the defendant's probation officer, as was the Redwine letter, it does not become elevated to the status of a confidential "record."

This interpretation is consistent with the legislative intent behind § 1175, which was aimed more at protecting the identity of voluntary participants in a drug abuse prevention program. Unlike the federal Comprehensive Drug Abuse Prevention and Control Act of 1970, P.L. No. 91-513, 84 Stat. 1236, which established absolute confidentiality of records of "drug research programs," § 1175, enacted in 1972, applies to "drug abuse prevention functions" which include not only treatment at centers such as Daytop, but also drug abuse education programs or job training programs for medical aides. Depending on the type of function, the success of such programs need not "depend upon the participants being assured of complete anonymity." *People* v. *Newman,* 32 N.Y.2d 379, 387, 298 N.E.2d 651, cert. denied, 414 U.S. 1163, 94 S. Ct. 927, 39 L. Ed. 2d 116. Plainly the stigma of being labeled an addict, which § 1175 seeks to minimize, is absent when, as here, the person has been committed in open court to a drug abuse prevention center with the express proviso that failure to stay there means he will return to court for a revocation hearing. It is for these reasons that the Petrillo testimony and the Redwine letter, which were direct observations of the defendant's absence, cannot be construed as "records" which are confidential under 21 U.S.C. § 1175.

## II

The defendant also assigns error in the trial court's failure to deliver a copy of the conditions of probation to him thereby invalidating the revocation. General Statutes § 53a-30 (a), after suggesting nine possible conditions of probation, states: "The court shall cause a copy of any such order to be delivered to the defendant and to the

probation officer, if any." The question raised is whether the word "shall" makes the statute mandatory or merely directory.

" ' "[L]egislative provisions designed to secure order, system and dispatch in proceedings are ordinarily held to be directory where, as here, they are stated in affirmative terms or, to express it differently, are unaccompanied by negative words." ' " *State ex rel. Arcudi* v. *Iassogna,* 165 Conn. 203, 205, 332 A.2d 90, citing *Broadriver, Inc.* v. *Stamford,* 158 Conn. 522, 529, 265 A.2d 75; see also *Winslow* v. *Zoning Board,* 143 Conn. 381, 388, 122 A.2d 789, and the cases collected in *Arcudi.* In *Arcudi,* the relevant statute stated that the governor "shall appoint" an unemployment commissioner during October, and this court, finding the statute to be directory, declined to invalidate the appointment made November 23. Similarly in this case, the statute attaches no penalty for failure of the court to deliver a copy of the probation conditions to the defendant. More importantly, the defendant makes no claim that he was unaware that leaving Daytop without permission would render his probation subject to revocation. *State* v. *Roberson,* 165 Conn. 73, 77, 327 A.2d 556. At the time of sentencing, while the defendant was already in Daytop, he requested at the time of plea that he remain in the program, and the court told him "you will realize that unless you keep going along with the program that Cheshire will be waiting for you." For these reasons we find no merit in this claim of the defendant; it would make a mockery of the statute to say failure to deliver standard conditions of probation renders probation invalid under the facts of this case. See *State* v. *Roberson,* supra, 77; *United States* v. *Markovich,* 348 F.2d 238, 240 (2d Cir.). Sentencing should not

be a game in which a wrong move by a judge means immunity for the prisoner. *State* v. *Langley,* 156 Conn. 598, 602, 244 A.2d 366, cert. denied, 393 U.S. 1069, 89 S. Ct. 726, 21 L. Ed. 2d 712.

### III

The defendant next claims error in that the hearing officer at the preliminary hearing improperly relied on hearsay evidence in determining there was probable cause that he had violated the terms of his probation. This claim is not supported by the record. Under the standards of *Morrissey* v. *Brewer,* 408 U.S. 471, 92 S. Ct. 2593, 33 L. Ed. 2d 484, and *Gagnon* v. *Scarpelli,* 411 U.S. 778, 93 S. Ct. 1756, 36 L. Ed. 2d 656, the preliminary hearing is designed to be informal and is limited to determining whether probable cause exists. The witness Raymond Bykowski, the probation officer to whom the defendant was assigned and who was familiar with the conditions of his sentence, testified that he was advised by Daytop personnel that the defendant left without permission. In his testimony he referred to the January 21, 1972 letter from Samuel Redwine, discussed above, which confirmed the defendant's violation of his probation conditions. Additionally, there is no dispute that the defendant was apprehended under the arrest warrant away from the Daytop facility. The hearing officer did not err in finding probable cause based on this evidence. As *Morrissey* said of the final revocation hearing, "the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." *Morrissey* v. *Brewer,* supra, 489; see *Gagnon* v. *Scarpelli,* supra, 783 n.5. Similarly, General Statutes § 53a-32 apparently contemplates use of hearsay testimony

even at the final hearing so long as it is not unsupported and is reliable, as the evidence was here. No higher standard is required at a preliminary fact-finding hearing. The hearing officer should only be satisfied that the probationer had abused the opportunity granted him not to be incarcerated. See *United States* v. *Markovich,* supra, 241; *United States* v. *Nagelberg,* 413 F.2d 708, 709 (2d Cir.).

## IV

We cannot agree with the defendant's claim that he was denied due process of law because his counsel was not permitted to represent him at the preliminary hearing on probable cause. It was at the May 31, 1973 hearing when the revocation of probation was about to be heard in open court that the defendant's counsel insisted on the defendant's rights under *Gagnon* v. *Scarpelli,* supra. The court thereupon referred the matter to the department of adult probation, an independent agency, for a preliminary hearing. In *Gagnon,* in which the probation of the probationer was revoked without any hearing, the court noted that revocation of probation is not a stage of criminal prosecution and that a probationer is not entitled to counsel as a matter of right; rather, the authority may appoint counsel on a case-by-case basis when it determines that legal assistance may be necessary as a matter of fundamental fairness; and "in most revocation hearings" counsel may be "both undesirable and constitutionally unnecessary" unless a probationer claims he has not committed the alleged violation upon which the revocation proceeding is based or that there are substantial reasons that justify or mitigate it. *Gagnon* v. *Scarpelli,* supra, 790.

From the record before us, as corrected to include a written transcript of the preliminary hearing, we

cannot say that the hearing officer abused his discretion in not permitting representation by counsel; this decision must be made on a case-by-case basis and depends on "the pecularities of particular cases." *Gagnon* v. *Scarpelli*, supra, 789; see *People ex rel. Calloway* v. *Skinner*, 33 N.Y.2d 23, 300 N.E.2d 716. There was no showing or claim made by the defendant that he did not commit the violation or that there were substantial reasons that justify or mitigate it. The final court revocation hearing was held only eleven days after the preliminary hearing report with counsel present as § 53a-32 permits; see *Gentry* v. *Warden*, 167 Conn. 639, 645, 356 A.2d 902. It should be noted that this statute, with its absolute right to counsel, guarantees more rights at the revocation hearing than *Gagnon* does. The defendant offered no evidence to the court at this hearing to explain his behavior or to show why the conditions of his probation should be modified or enlarged. He focused his presentation on the legality of the preliminary hearing and presented no witnesses or other affirmative evidence in his behalf. The hearing officer and the court acted within the guidelines of *Gagnon*, as noted above. We hold that the court below did not abuse its discretion in revoking the defendant's probation. *United States* v. *Markovich*, 348 F.2d 238, 241 (2d Cir.).

## V

Finally, the defendant claims the court erred in preparation of the finding.[2] The defendant is not

---

[2] Counsel, instead of stating the evidence in the appendix to his brief in narrative form as prescribed by § 720 of the Practice Book, has printed entire portions of the transcript which are, in turn, mere repetitions of portions of his draft finding, already included in the printed record. Fifty-six pages of the appendix to his brief merely reprint sixty-one pages of the record, and thirty-eight pages of col-

entitled to the changes in the finding which he seeks, except those already made, since a finding will not be disturbed or corrected for evidential or immaterial matters or for the addition of facts which would serve no useful purpose or directly affect the ultimate facts upon which the judgment depends. *Novella* v. *Hartford Accident & Indemnity Co.*, 163 Conn. 552, 567, 316 A.2d 394; *Aetna Casualty & Surety Co.* v. *Murray*, 145 Conn. 427, 429, 143 A.2d 646. It is the function of the trial court to determine the relative credit to be given to the testimony of witnesses and to deduce reasonable inferences from the evidence. *Greco* v. *Morcaldi*, 145 Conn. 685, 687, 146 A.2d 589.

There is no error.

In this opinion the other judges concurred.

loquy printed by the defendant are not relied on by him. The procedure outlined in § 720 is designed to save time, effort and expense; Maltbie, Conn. App. Proc. § 331; *Marciniak* v. *Wauregan Mills, Inc.*, 139 Conn. 264, 269, 93 A.2d 135; and to avoid "a wholly unnecessary burden on this court." *State* v. *Magoon*, 156 Conn. 328, 335, 240 A.2d 853. Neither purpose is served by the defendant's practice here.