## STATE OF CONNECTICUT *v.* ROBERT C. BAXTER
### (6999)

DUPONT, C. J., O'CONNELL and FOTI, Js.

---

[2] We note that in its brief the state concedes that it has abandoned its claim that the entry was consensual.

Argued April 12—decision released August 8, 1989

*Andrew R. Sherriff,* for the appellant (defendant).

*Timothy J. Sugrue,* deputy assistant state's attorney, with whom, on the brief, was *Gerard P. Eisenman,* assistant state's attorney, for the appellee (state).

DUPONT, C. J. Two issues dominate this appeal from the trial court's judgment revoking the defendant's probation and imposing the sentence previously suspended. The first is whether the federal constitution mandates a remand to the trial court for a new probation revocation hearing because the information charging the defendant with a violation of a condition of his probation was at variance with the affidavit upon which the arrest warrant for a violation was based, and at variance with the evidence produced by the state in support of the violation. The second issue is whether the defendant was entitled to both a preliminary hearing and a final hearing when charged with a violation of a condition of probation. A ubiquitous backdrop to both issues is whether the issues should be reviewed under *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973).

The defendant pleaded guilty to manslaughter in the second degree on November 15, 1985, and was sentenced, pursuant to a plea agreement, to three years in prison, execution suspended after eighteen months,

and five years probation.[1] The terms of probation, signed by the defendant, were that the defendant maintain full-time employment, that he stay away from the victim's parents, and that he abide by all of the standard conditions of probation.[2] The parties agree that, based on the record, another condition of probation was that the defendant perform 1000 hours of volunteer work.[3] The conditions of probation enumerated in the document signed by the defendant, however, did not include any mention of community service. After the defendant served the requisite time in prison, he was released and placed on probation. Thereafter, it was arranged that the community service be performed at the Dinan Center. Difficulties arose in the defendant's performance of his duties because the center was fifteen miles from his home and because the scheduled days and hours for performance allegedly conflicted with his employment. In August of 1987, the defendant's probation officer moved for a modification of the condition of probation relating to community service. The condition was modified in accordance with the request of the probation officer on August 19, 1987, by the court, *Corradino, J.* The modification, in relevant part, is as follows: "(1) 6 hours of community service per week (total = 1000 hours) otherwise vop."[4] The defendant signed the condition as modified on October 6, 1987.[5] On December 8, 1987, the defendant

---

[1] The charge of manslaughter in the second degree stemmed from a motor vehicle accident that resulted in the death of a young woman and that was allegedly caused by the defendant's driving at an excessive speed.

[2] None of the standard conditions of probation is at issue in this case.

[3] In an affidavit dated July 17, 1988, the sentencing court, *Rottman, J.*, stated that on November 15, 1985, he was a judge of the Superior Court and that the special condition of probation was intended to be 100 hours of community service.

[4] "Vop" presumably means violation of probation.

[5] A second motion for modification was filed by the defendant, but the court, *Corradino, J.*, declined to act on it because the hearing which is the subject of this appeal was pending before *Geen, J.*

was arrested, and the information stated that the arrest was for a "violation of the terms of probation in a judgment dated 12/6/85 by the Honorable Alvin Rottman." On the same day, the defendant was released on bond. A probation revocation hearing was held in March, 1988.

The application for the arrest warrant was based upon an affidavit of the defendant's probation officer. The application was also reviewed and signed by the chief probation officer. The affidavit stated that the special condition relating to community service had been modified by *Corradino, J.,* on August 19, 1987, and the affidavit contained twenty paragraphs of fact-specific allegations relating to the alleged violation of the modified condition of probation.

Thus, the information charged the defendant with a violation of the conditions imposed by *Rottman, J.,* but the affidavit upon which the arrest warrant was based and signed asserted a violation of the modified condition as ordered by *Corradino, J.* The trial court, *Geen, J.,* which conducted the revocation of probation hearing, stated that the issue was whether the defendant had performed six hours (per week) of community service, thus referring to the modified condition imposed by *Corradino, J.* The parties and the court conducted the hearing based on whether the defendant had or could have complied with the modified condition of probation as to community service.

The charge set forth in the information—a violation of an order of one court—was not the charge—a violation of an order of another court—upon which the hearing was based. The state does not deny that that is so, but argues that because the defendant did not contest the specificity of the information in the trial court, he

is precluded from doing so on appeal, and claims that no review should be accorded the claim under *State* v. *Evans,* supra.

*State* v. *Thurman,* 10 Conn. App. 302, 306–307, 523 A.2d 891, cert. denied, 204 Conn. 805, 528 A.2d 1152 (1987), establishes a four part test for determining the reviewability of an *Evans* claim. The defendant has characterized his claim as one of due process, a violation of his constitutional rights, and has, therefore, passed the first prong of the *Thurman* test. The second question under *Thurman* is whether the defendant, as a probationer, has a constitutional claim based upon a limited review of the record. *Gagnon* v. *Scarpelli,* 411 U.S. 778, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1972), answers that question in the affirmative. A probationer has a minimal guarantee of due process; id., 782; and a limited review of the record reveals that the defendant's claim is supported. Due process requires that a defendant be given notice of the specific charge against him or her. See *State* v. *Steve,* 208 Conn. 38, 47, 544 A.2d 1179 (1988). The claim is reviewable, therefore, and we review it to determine whether, in fact, there was any deprivation of a constitutional right.

We conclude that there was not a deprivation of a constitutional right because the defendant was not prejudiced by the variance between the information and the affidavit that supported the arrest warrant. See *State* v. *Steve,* supra; *State* v. *Dahlgren,* 200 Conn. 586, 597, 512 A.2d 906 (1986). The defendant's conduct of his defense was based on the warrant and its accompanying affidavit, as was the state's presentation of its case for the revocation of the defendant's probation. The affidavit on which the warrant was based was extremely specific, and the hearing was held based on the allegations in the affidavit. The defendant, therefore, was not prejudiced by the lack of specificity in

the information. We conclude that, on the basis of this record, the defendant was not deprived of a constitutional right.

The second issue that must be resolved is whether the due process clause of the fourteenth amendment to the United States constitution entitles the defendant to a preliminary probable cause hearing under the dictates of *Gagnon* v. *Scarpelli,* supra, and *Morrissey* v. *Brewer,* 408 U.S. 471, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972).

The state urges that we not consider that issue because the defendant did not raise it prior to or during the probation revocation hearing, and because it is not reviewable under *State* v. *Evans,* supra. Additionally, the state argues that although the claim was the subject of the denial of the defendant's motion to open, that denial was not the subject of any amended appeal. The defendant's position is that his motion to the trial court to open and set aside the judgment of probation revocation based upon the constitutional right allegedly accorded him under *Gagnon,* was sufficient to preserve his appellate rights. He also urges that because he raised the claim in his preliminary statement of issues filed with this appeal, he has preserved his appellate rights as to it. He argues, furthermore, that, in any case, the issue must be reviewed under *Evans.*

It is not necessary for us to decide whether the defendant's failure to amend his appeal to request review of the denial of his motion to open the judgment based upon a constitutional claim, as opposed to an attempt to open a judgment to offer additional evidence; *Freccia* v. *Martin,* 163 Conn. 160, 302 A.2d 280 (1972); precludes him from now raising the issue on appeal. See also *Brown* v. *Brown,* 190 Conn. 345, 350, 460 A.2d 1287 (1983). The issue is reviewable because,

based upon a limited review of the record, the defendant's claim amounts to one of a constitutional deprivation of his due process rights allegedly accorded to him under *Gagnon* v. *Scarpelli,* supra. See *State* v. *Thurman,* supra.

The next question that must be resolved is whether the defendant was, in fact, deprived of a constitutional right because of the failure of the trial court to conduct a preliminary hearing. We conclude that the procedure followed, which did not include a preliminary hearing to establish probable cause for a probation violation, gave the defendant the procedural due process rights to which he was entitled.

Since the cases of *Gagnon* v. *Scarpelli,* supra, and *Morrissey* v. *Brewer,* supra, were decided, the precise due process rights that should be accorded to probationers in Connecticut pursuant to the fourteenth amendment have not been clearly delineated. In this state there are statutes, rules of practice, and case law on the subject that are not entirely consistent.

The appellate courts have not yet determined whether, or under what conditions, statutes and rules of practice require both a preliminary hearing and a subsequent formal hearing to determine whether probation should be revoked because of the violation of a condition of probation.

The response to the issue requires an examination of *Gagnon* and *Morrissey* and their decisional donees, with an awareness of General Statutes § 53a-32 (a)[6] and Practice Book § 943.[7]

---

[6] General Statutes § 53a-32 (a) provides in relevant part: "At any time during the period of probation . . . the court . . . may issue a warrant for the arrest of a defendant for violation of any of the conditions of probation . . . . or may issue a notice to appear to answer to a charge of such violation, which notice shall be personally served upon the defendant. . . . Any probation officer may arrest any defendant on probation

*Morrissey* v. *Brewer,* supra, held that the minimum due process requirements for revocation of parole include written notice of the claimed parole violation, disclosure to the parolee of the evidence against him, the opportunity to be heard in person and to present witnesses and documentary evidence, the right to confront and cross-examine adverse witnesses in most instances, a neutral hearing body, and a written statement as to the evidence for and reasons for parole revocation. The court also held that there should be a preliminary hearing by a detached body to determine

without a warrant or may deputize any other officer with power to arrest to do so by giving him a written statement setting forth that the defendant has, in the judgment of the probation officer, violated the conditions of his probation. . . . Provisions regarding release on bail of persons charged with a crime shall be applicable to any defendant arrested under the provisions of this section. Upon such arrest . . . the probation officer shall immediately so notify the court. . . . Thereupon, or upon an arrest by warrant as herein provided, the court shall cause the defendant to be brought before it without unnecessary delay for a hearing on the violation charges. At such hearing the defendant shall be informed of the manner in which he is alleged to have violated the conditions of his probation . . . shall be advised by the court that he has the right to retain counsel and, if indigent, shall be entitled to the services of the public defender, and shall have the right to cross-examine witnesses and to present evidence in his own behalf."

[7] Practice Book § 943 provides: "[P]roceedings for revocation of probation shall be initiated by an arrest warrant supported by an affidavit or by testimony under oath showing probable cause to believe that the defendant has violated any of the conditions of his probation . . . or by a written notice to appear to answer to the charge of such violation, which notice, signed by a judge of the superior court, shall be personally served upon the defendant by a probation officer and contain a statement of the alleged violation. All proceedings thereafter shall be in accordance with the provisions of Secs. 634 and 660. At the revocation hearing, the prosecuting authority and the defendant may offer evidence and cross-examine witnesses. If the defendant admits the violation or the judicial authority finds from the evidence that he committed the violation, the judicial authority may make any disposition authorized by law."

Practice Book §§ 634 and 660 relate to arraignment and the conditions governing release of defendants. Probationers, after arrest, are thus given by § 943 all of the rights accorded other persons initially charged with a crime.

if probable cause exists to detain the parolee pending a final decision on revocation. *Gagnon* v. *Scarpelli,* supra, extended the holding in *Morrissey* to probationers because there is no "difference relevant to the guarantee of due process between the revocation of parole and the revocation of probation . . . ." Id., 782. Neither the probationer in *Gagnon* nor the parolee in *Morrissey* was accorded a hearing, either preliminary or final, prior to the revocation of probation or parole, and both cases involved an administrative scheme for revocation as opposed to a judicial scheme for revocation such as that in Connecticut.[8]

Legal commentators and scores of cases decided by state and federal courts have interpreted *Morrissey* and *Gagnon* as affording minimal due process rights to parolees and probationers that are less than the full scale rights afforded to defendants initially arrested for the commission of crimes. M. Nahari, "Due Process and Probation Revocation: The Written Statement Requirement," 56 Ford. L. Rev. 759 (1988). "A strict interpretation of the *Morrissey* standards runs contrary to the spirit of flexibility with which the Supreme Court promulgated the *Morrissey* and *Gagnon* due process requirements." Id., 773. "[D]ue process is flexible and calls for those procedural protections that the particular situation demands." *State* v. *Smith,* 207 Conn. 152, 171, 540 A.2d 679 (1988). A revocation proceeding does not require all of the procedural components associated with an adversarial criminal proceeding. Id., 176. In

---

[8] We are aware that General Statutes § 53a-32 (a) provides for the initiation of probation revocation proceedings by a probation officer or his deputy. The present case is not concerned, on its facts, with such an initiation, and we need not comment on the constitutionality of such a procedure. Practice Book § 943, however, does not provide for the initiation of proceedings to revoke probation by a nonjudicial officer, except if the revocation is based upon a conviction for a new offense. There are disparities between the rule and the statute that need not be reconciled for the purposes of this opinion. See *State* v. *Clemente,* 166 Conn. 501, 353 A.2d 723 (1974).

other words, the purpose of a probation revocation hearing is to determine whether there are findings upon which a violation of a condition can rest and, if there are, whether, in the discretion of the court, those findings warrant a continuation, modification or revocation of the conditional liberty of a defendant. Those initially charged with a crime have, were it not for the charge, an absolute right to liberty, as opposed to those charged with a violation of probation who have only a conditional right to liberty.

Three United States Supreme Court cases, decided since the 1972 decisions of *Morrissey* and *Gagnon,* have amplified what is meant by due process in a parolee or probationer revocation setting. The preliminary hearing described in *Morrissey* and *Gagnon* is not necessary if a parolee or probationer has already been imprisoned for another crime while on parole or probation. *Moody* v. *Daggett,* 429 U.S. 78, 97 S. Ct. 274, 50 L. Ed. 2d 236 (1976). The rationale for the holding is that the subsequent conviction is the equivalent of probable cause or reasonable ground to believe the parolee or probationer has violated a probation or parole condition and that the issuance of a warrant for the probation or parole violation did not cause the deprivation of the defendant's liberty. Id., 87. "[I]n cases such as this, in which the parolee [or probationer] admits or has been convicted of an offense plainly constituting a parole violation, the only remaining inquiry is whether continued release is justified, notwithstanding the violation." Id., 89; see also *Nelson* v. *United States,* 479 A.2d 340 (D.C. App. 1984); *Smith* v. *United States,* 474 A.2d 1271 (D.C. App. 1983). The teaching of these cases is that no preliminary hearing is necessary when the defendant is not being detained because of the probation violation. Id. This is also the case pursuant to Rule 32.1 (a) (1) of the federal rules of civil procedure. Fed. R. Civ. P., Notes of Advisory Commit-

tee on Rule 32.1 (a) (1). If no detention is caused by the arrest of a probationer for a probation violation, no preliminary hearing is required to satisfy due process. *United States* v. *Strada,* 503 F.2d 1081 (8th Cir. 1974); *United States* v. *Tucker,* 524 F.2d 77 (5th Cir.), cert. denied, 424 U.S. 966, 96 S. Ct. 1462, 47 L. Ed. 2d 733 (1975); *Hull* v. *Enger Construction Co.,* 550 P.2d 692 (1976).

The purpose of the initial hearing as described in *Gagnon* is to determine as quickly as possible whether there is probable cause to believe acts have been committed that violated a probation condition, so that the conditional liberty of a defendant is not terminated without such cause. The purpose of the final hearing is to make the ultimate conclusion of whether or not there has been a violation and, if so, whether probation should be terminated, modified or continued. There is no violation of due process rights if these purposes are satisfied and there is no detention of the probationer.

In 1985, *Black* v. *Romano,* 471 U.S. 606, 105 S. Ct. 2254, 85 L. Ed. 2d 636 (1985), was decided. A unanimous court held that due process did not require a trial court to indicate that it considered alternatives to incarceration before revoking probation. The significance of the case is in its discussion of *Morrissey* and *Gagnon. Black* makes it clear that those cases outline procedural guarantees only, and do not intrude into the substantive grounds for revocation of probation. There should be no "imposition of rigid requirements that would threaten the informal nature of probation revocation proceedings or interfere with exercise of discretion by the sentencing authority." Id., 611. "[O]ur precedents have sought to preserve the flexible informal nature of the revocation hearing, which does not require the full panoply of procedural safeguards associated with a criminal trial." Id., 613, citing *Morrissey* v. *Brewer,* supra, 489–90.

There is a silent message in *Black*. Its holding is unrelated to whether a preliminary hearing must be held in the probation revocation process in order to satisfy due process, but it is clear that there was, in fact, only one hearing conducted in the case. Although that is true, no violation of the defendant's procedural due process rights was found. The court determined that the sentencing court's memorandum of decision and the transcript of the hearing of that court provided the necessary written statement to the defendant as mandated by *Gagnon*. The memorandum and transcript explained the evidence relied upon and the reason for the decision to terminate probation. *Black* v. *Romano,* supra, 616. They also formed the basis for informing the defendant of the specific way in which the state had charged that he violated his probation. The lower court decisions of *Black* in the federal district court for the eastern district of Missouri and the court of appeals for the eighth circuit state that the defendant had only one revocation hearing, held a little more than one month after his arrest for an unrelated crime. *Black* v. *Romano,* 567 F. Sup. 882 (E.D. Mo. 1983), and 735 F.2d 319 (8th Cir. 1984). It is clear, therefore, that the defendant was not given a preliminary hearing, and that no deprivation of due process arose from the lack of such a hearing.

It is unclear whether the United States Supreme Court was simply following *Moody* when it found probable cause arising from the second arrest itself, or whether a preliminary probable cause hearing was unnecessary because the defendant had not been deprived of his liberty, or whether the particularized statement of the violation in the trial court's show cause order obviated the necessity for a preliminary hearing. At least one court has concluded that the latter is true.

There is compliance in every major respect with *Morrissey, Gagnon* and *Black* when the trial court's order

to show cause gave written notice of the alleged violation of the conditions of his probation, and the one hearing itself is an adversarial, evidentiary hearing at which the probationer was represented by counsel and had a full opportunity to present testimony and mitigating evidence and to cross-examine witnesses. *Saunders* v. *United States,* 508 A.2d 92, 97 (D.C. App. 1986).

The third United States Supreme Court case affecting *Gagnon* and *Morrissey* is *Griffin* v. *Wisconsin,* 483 U.S. 868, 107 S. Ct. 3164, 97 L. Ed. 2d 709 (1987). It casts doubt on the necessity for a mandatory preliminary hearing in probation revocation hearings.[9] "A State's operation of a probation system . . . may justify departures from the usual warrant and probable cause requirements." Id., 873–74.

In this area of the procedural due process to be accorded probationers accused of violating a condition or conditions of their probation, the United States Supreme Court has moved from minimum requirements to bare minimum requirements, as evidenced by its evolution from *Gagnon* to *Griffin.* The decisions in Connecticut during the same time span, 1972 to the present, are reflective of the United States Supreme Court decisions.

*State* v. *Roberson,* 165 Conn. 73, 327 A.2d 556 (1973), established that an appellate court's review of an order revoking probation is based on whether the trial court abused its discretion. If the trial court was reasonably satisfied that the terms of probation had been violated and that the beneficial purposes of probation were no longer being served, the judgment of revocation should be upheld. *Roberson* was decided after *Morrissey* and cites it. The underlying violation in *Roberson* was the

---

[9] The holding of the case is unrelated to whether a preliminary hearing is required, and relates, instead, to whether a search warrant must be obtained before searching a probationer's home.

conviction of another crime which the defendant admitted. There is no discussion of whether the defendant should have had a preliminary hearing pursuant to *Morrissey* or whether the defendant was incarcerated because of his conviction of the subsequent crime.

The only published Connecticut criminal case in which the subject of a preliminary probation revocation hearing was discussed is *State* v. *White,* 169 Conn. 223, 363 A.2d 143, cert. denied, 423 U.S. 1025, 96 S. Ct. 469, 46 L. Ed. 2d 399 (1975).[10] In that case, the defendant was arrested pursuant to a warrant, and a probation revocation hearing was held three weeks later. The defendant cited *Gagnon,* which had been decided a scant seventeen days earlier, and the trial court, because of the "newness" of *Gagnon,* continued the hearing until after a preliminary hearing had been held.[11] The preliminary hearing was conducted by a probation department officer not connected with the defendant's case. The officer determined that there was probable cause to believe that the defendant had violated a condition of his probation. After a second, full hearing, the court revoked the defendant's probation. The case, then, is peripherally involved with *Gagnon* in that a two-tiered proceeding was, in fact, conducted,

[10] *Lee* v. *Board of Education,* 181 Conn. 69, 78, 434 A.2d 333 (1980), which was not a criminal case, states, in dicta, that a parolee's freedom may only be revoked, consistent with the due process clause of the fourteenth amendment of the federal constitution, upon a preliminary determination of probable cause, followed by a later hearing conducted with specific procedural guarantees of due process to determine whether revocation should occur.

[11] The trial court found that because Connecticut had not yet adopted a procedure to be followed in accordance with *Gagnon* v. *Scarpelli,* 411 U.S. 778, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1972), a preliminary and a final probation revocation hearing should be held. It also found that General Statutes § 53a-32 (a) requires only one hearing at which the defendant is entitled to be informed of the manner in which he is alleged to have violated the condition, to be represented by counsel, to cross-examine witnesses and to give evidence. *Records and Briefs,* Findings 24 and 110.

but the case does not hold that such a procedure is mandated by *Gagnon,* given the statutes and rules of practice of Connecticut.[12]

Although some Connecticut cases on the subject of the requirements of due process for probation revocation hearings since *State* v. *White,* supra, have cited *Morrissey, Gagnon, Black* or *Griffin,* they have not required a preliminary hearing. *Payne* v. *Robinson,* 207 Conn. 565, 541 A.2d 504, cert. denied, 488 U.S. 898, 109 S. Ct. 242, 102 L. Ed. 2d 230 (1988); *Gentry* v. *Warden,* 167 Conn. 639, 356 A.2d 902 (1975); *State* v. *Johnston,* 17 Conn. App. 226, 551 A.2d 1264 (1988); *State* v. *Roman,* 13 Conn. App. 638, 538 A.2d 1076 (1988); *State* v. *Navikaukas,* 12 Conn. App. 679, 533 A.2d 1214 (1987), cert. denied, 207 Conn. 804, 540 A.2d 74 (1988); *State* v. *Cooley,* 3 Conn. App. 410, 488 A.2d 1283, cert. denied, 196 Conn. 805, 492 A.2d 1240 (1985). Other Connecticut cases do not cite any United States Supreme Court cases, limiting their discussions to General Statutes §§ 53a-30 or 53a-32, and then finding that a trial court did not err in revoking probation after one hearing. *State* v. *Pecoraro,* 196 Conn. 305, 493 A.2d 180 (1985); *State* v. *D'Ambrosia,* 195 Conn. 461, 488 A.2d 822 (1985); *State* v. *Toler,* 192 Conn. 321, 471 A.2d 643 (1984); *State* v. *Johnson,* 11 Conn. App. 251, 527 A.2d 250 (1987).

We conclude that, consistent with the United States constitution, there are instances in which the preliminary hearing of *Gagnon* is superfluous. The present case

[12] *State* v. *White* held that General Statutes §§ 52-146d through 52-146j, the statutory psychiatrist-patient privilege, do not prevent the use of knowledge obtained thereby from being available to the court in a probation revocation hearing, that failure to deliver standard conditions of probation to the defendant did not render the probation invalid on the particular facts of the case, that it was not error to introduce hearsay at the preliminary hearing or at the final hearing, and that there was no denial of due process although the defendant had no counsel at the preliminary hearing.

is one of those instances. The warrant application was accompanied by an affidavit of the probation officer in charge of the defendant's file, and the warrant itself was signed by a judge of the Superior Court as an independent magistrate. The defendant was arrested on the basis of the warrant, was released on bond shortly after the arrest, was provided with all of the safeguards accorded to criminal defendants by the rules of practice and had a full hearing less than three months after his arrest for violating the conditions of his probation. There was no substantial time lag between the arrest and the eventual determination by the trial court that the probation should be terminated. On the basis of these facts, the necessity for the procedural due process requirement of a preliminary hearing as discussed in *Gagnon* was not present.[13] See *Liistro* v. *Robinson*, 170 Conn. 116, 365 A.2d 109 (1976). Furthermore, neither our statutes nor our rules of practice specifically require a preliminary hearing.

The defendant was not deprived of a right arising from the fourteenth amendment to the United States constitution or from a Connecticut statute or rule of practice.

Most of the defendant's remaining claims of error are subject to a summary disposition.

He claims error in the trial court's refusal to allow the sentencing judge to testify that 100 hours, instead of 1000 hours, of community service was intended as an original condition of probation. The trial court rightly concluded that this testimony was irrelevant to the issue of the revocation hearing, namely, whether the defendant had performed six hours per week of

---

[13] We need not decide whether probationers who are held in custody solely for an alleged violation of a condition of probation and who do not receive a speedy hearing on the revocation of probation are constitutionally entitled to a preliminary hearing.

community service as subsequently ordered by a modification to the original order of community service. Furthermore, an affidavit of the sentencing judge was part of the court file.

Another of the defendant's claims is that there can be no violation of a condition of probation unless the violation was willful. *Bearden* v. *Georgia*, 461 U.S. 660, 103 S. Ct. 2064, 76 L. Ed. 2d 221 (1983), recognized that in the situation of the failure of an indigent defendant to pay a fine or restitution, revocation of probation cannot be automatic. There must be a finding in such a situation that the defendant did disobey wilfully the condition imposed by the court. The holding of *Bearden,* however, does not prohibit a revocation of probation in other contexts even if the failure to obey a condition of probation is not found to be intentional or willful. *Black* v. *Romano,* supra, 611. Although a finding of a violation of a condition of probation should not lead to a rote revocation of probation; *State* v. *Cooley,* supra, 414; there is no constitutional requirement, except in the circumstance of *Bearden,* that the trial court must first find that the violation was willful, before probation may be revoked.

The rest of the defendant's claims of error relate to the trial court's rulings on evidence, its reliance on the testimony of the defendant's probation officer, the court's failure to make specific findings that the purposes of the defendant's probation were no longer being served, and the alleged bias of the trial court.

Hearsay evidence is admissible into evidence at a probation revocation hearing at the discretion of the court, if it is relevant, reliable and probative. *Gagnon* v. *Scarpelli,* supra, 789; *Morrissey* v. *Brewer,* supra, 499; *State* v. *White,* 169 Conn. 223, 239–40, 363 A.2d 143 (1975). It was within the trial court's discretion to determine

the credibility of the witnesses and the weight to be given their testimony, including the testimony of the defendant's probation officer.

The primary purpose of a probation revocation proceeding is to determine whether the defendant is complying with the terms of his probation. *Payne* v. *Robinson,* supra, 571. Appellate review "distills to a review of the reasonableness of two findings," whether there was a violation of a condition of probation, and whether probation should be revoked because its rehabilitative purposes are no longer being served. *State* v. *Navikaukas,* supra, 682. Under the facts of this case, the court impliedly found that the beneficial purposes of probation were no longer being served without making specific findings. See id. Both of the ultimate findings of the court, that there was a violation of a condition of probation and that probation should be revoked, were reasonable and the court need not have made specific subsidiary findings of fact.

The defendant's claim of judicial bias was not preserved. No motion was made to disqualify the court, and there are no facts, and no indication from the record, from which we can conclude, that the trial court was not impartial. See *Dubaldo* v. *Dubaldo,* 14 Conn. App. 645, 542 A.2d 750 (1988).

There is no error.

In this opinion the other judges concurred.