[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO MODIFY PROBATION
On September 25, 1996, Charles T. Donnelly, Senior Probation Officer, moved to modify the terms of probation imposed upon the probationer, William Puckett.
From the record and the evidence, the following facts are found.
The probation was imposed after probationer's conviction on June 27, 1989, for the crime of sexual assault in the first degree in violation of General Statutes § 53a-70a) and wilful failure to appear in the first degree in violation of § 53-172 (a). The conviction resulted from pleas of guilty under the so-called "Alford Doctrine" under which probationer did not admit to the truth of some or all of the factual claims made by the state. North Carolina v. Alford, 400 U.S. 25, 35
37 (1970). Before accepting the pleas, however, the court was required to find that a factual basis for conviction existed. Connecticut Practice Book § 713. Paulsen v. Manson,203 Conn. 484, 493 n. 3 (1987).
A pre-sentence investigation was ordered for August 8, 1989, and the matter was continued for sentencing. On that date a sentence of twelve years was imposed with the execution suspended after six years on the sexual assault charge and a consecutive sentence of five years with execution suspended after two years was imposed on the second count. The total effective sentence was seventeen years, execution suspended after eight years with five years probation.
In addition to the general terms of probation, specific terms of probation mandated no contact with the victim or her CT Page 1919 family together with alcohol and drug counseling and treatment in either outpatient or inpatient status. The court also ordered as a condition of probation psychological/psychiatric counseling or treatment as in or out patient. Sex offender treatment at Somers was also recommended.
Probationer completed his term of imprisonment and commenced probation in April, 1994.
At some time thereafter, probationer commenced treatment with Special Services Center for the treatment of Problem Sexual Behavior. On May 16, 1995, his treatment at Special Services was terminated and his probation officer notified. The reason for the termination was probationer's refusal to admit the sexual assault and his claim that he had been falsely accused.
On or about June 29, 1996, while on probation, probationer was arrested on a charge of breach of peace. The police report indicated that the arrest was made after a report that probationer had punched his girl friend in a bar. The woman involved was uncooperative with the police and minimized the event. The case was reduced to an infraction and probationer paid a fine.
No action was taken to charge probationer with a violation of his probation after the Norwich incident, but he was placed on intensive probation and in August his supervision was transferred to Mr. Donnelly, who was an intensive probation officer. General Statutes § 54-105 (b).
In September, Mr. Donnelly filed the present motion requesting the court to modify the conditions of probation as follows:
 This officer is requesting that a sex offender evaluation be added to Mr. Puckett's special conditions of probation.
 If it is determined through the evaluation that Mr. Puckett could benefit from sex offender treatment as well as reduce the level of risk to reoffend, we would also request treatment be added to his conditions.
CT Page 1920
 Also, if it is determined through this clinical evaluation that Mr. Puckett presents high risk to the community, that probation be allowed to notify those people we feel are at risk, per existing Adult Probation policy (see attached). The Office of Adult Probation notification policy may include members of Mr. Puckett's household, bordering neighbors and any person who would hire Mr. Puckett or, for whom he is employed. (Mr. Puckett is an independent contractor/painter.)
It is noted that under the provisions of General Statutes § 53a-30 (b) the Office of Adult Probation could have imposed the requirement of sex offender treatment without bringing the matter before the court for action under subsection (c) of the above statute. It is reasonable to conclude that the motion was presented to the court because of the request for authority to notify persons who the Office of Adult Probation might consider at risk.
Probationer's 1989 conviction predates Public Act 95-142, now General Statutes § 54-102a. This statute requires registration of persons convicted of a violation of § 53a-70a
and the release of information about registered offenders to various parties. In Roe v. Office of Adult Probation,938 F. Sup. 1080 (D. Conn. 1996), the Federal District Court determined that extending the sex offender notification policy to persons whose conviction predated P.A. 95-142 was an ex post facto imposition of punishment in violation of the United States Constitution.
In October, before the Federal District Court for the district of Connecticut, probationer sought an injunction to enjoin the Office of Adult Probation from enforcing "Public Act 95-142 (a.k.a Megan's Law) and enforcing the Office of Adult Probation Sex Offender Notification Policy" as to him. The notification policy involved P.A. 95-142 type notification concerning sex offenders convicted prior to the effective date of the act. In response to the injunction request, the Federal Court issued the following order in November:
 The Defendants, and each of them, and their successors in office and agents, servants, and employees are ENJOINED and RESTRAINED from applying, enforcing, or implementing the Office of CT Page 1921 Adult Probation's Sex Offender Notification Policy, revised May 13, 1996 and as supplemented and amended on September 19, 1996, as to Plaintiff J.D. (Probationer). At the hearing held on this matter on October 28, 1996, Defendants agreed to be bound by this injunction and agreed not to apply, enforce, or implement the Office of Adult Probation's Sex Offender Notification Policy or Public Act 95-142 (a.k.a. Megan's Law) to Plaintiff J.D. Nothing contained in this Order shall prevent Defendants from petitioning the Superior Court of Connecticut, pursuant to Conn. Gen. Stat. § 53a-30
or other applicable state statute, for an order modifying the terms of Plaintiff J.D.'s probation to include, inter alia, notification concerning Plaintiff J.D. to individual members of the community that the Superior Court determines to be justified and warranted.
 The court further ORDERS that Plaintiffs' motion for an injunction against the application, enforcement, and implementation of the Defendants' Intensive Supervision Conditions is DENIED. The court finds that the Intensive Supervision Conditions, as applied to Plaintiff J.D., do not violate the Ex Post Facto Clause of the United States Constitution and do not otherwise rise to the level of a constitutional infraction. Whether current state law permits the imposition of the Intensive Supervision Conditions by the Office of Adult Probation is a matter of statutory interpretation more properly resolved by the state court, not this Court. The Court further finds that Plaintiff S.R. does not have standing to challenge the Intensive Supervision Conditions, as applied to Plaintiff J.D.
It is significant to note that the injunction specifically refrained from preventing the Office of Adult Probation from requesting this court to issue an order modifying the terms of probationer's probation to include notification concerning Probationer "to individual members of the community that the Superior Court determines to be justified and warranted." CT Page 1922
The Federal Court also determined that the Intensive Supervision Conditions applied to probationer did not violate the Ex Post Facto Clause.
Prior to the issuance of the federal injunction, on October 29, 1996, petitioner appeared before the court with the attorney who represented him in the federal action. At that time, it was stipulated that petitioner would participate in and cooperate with sex offender evaluation and assessment by a CATSO affiliated agency concerning his need for sex offender treatment and the risk he presented to offend in the future. The results of the evaluation would be made available to probationer and Adult Probation. The evaluation would be performed by an agency selected by probationer from a list provided by Adult Probation.
Petitioner confirmed his agreement to the terms of the stipulation on the record in response to questions by the court and Northeast Clinical Specialists of Willimantic was selected to conduct the evaluation.
In connection with the evaluation, Northeast requested Adult Probation to provide information concerning probationer's background. The response to this request consisted of two letters. One letter from chief probation officer Norman K. Shove dated November 14, 1996, contained information about the offense from which probationer was on probation for. This information was derived from the presentence investigation report prepared in accordance with General Statutes § 54-91a. The second letter from Mr. Donnelly dated November 21, 1996 contained probationer's conditions of probation, a summary of his June 29, 1996 breach of peace arrest, the disposition of that case and his criminal record. The information concerning the June 29, 1996 arrest was based primarily on the police report.
Probationer objected to the letters being admitted into evidence claiming that they were hearsay. The letters were, however, admitted. Northeast's evaluation was partially derived from the letters which could be treated as original evidence.
In any event, considering the nature of the proceeding, the letters were properly admitted and the contents could be relied upon by the court in determining whether or not the CT Page 1923 conditions of probation should be modified. A modification hearing is similar in nature to a revocation hearing in that it is a continuing consequence of the original conviction. The evidence must be reliable and probative and the court may consider the types of evidence considered at the original sentencing hearing. State v. Davis, 229 Conn. 285 (1991);Payne v. Robinson, 10 Conn. App. 395 (1987). Hearsay evidence is admissible into evidence at a revocation hearing at the discretion of the court if such evidence is relevant, reliable and probative. State v. Baxter, 19 Conn. App. 304, 320
(1989).
Certainly, these exhibits which contained the same type of information, which would be considered by a sentencing judge, must be considered relevant, reliable and probative, should be considered in connection with the issue now before the court.
In preparing the report, Scott J. Stevens, a clinical member of Northeast, relied upon the information contained in the letters from Shove and Donnelly together with a battery of psychological tests and questionnaires interpreted by Dr. Ronald Anderson.
Mr. Stevens also interviewed petitioner on four occasions.
After setting forth his reasons in the report, Mr. Stevens concluded that probationer was seen to be at a high risk for repeating some kind of sexually abusive behavior, and that he was in need of specialized sex offender treatment. Dr. Anderson, who was called to testify by Probationer, agreed with this conclusion.
Probationer also called an eminent psychiatrist, Dr. Fernando Stern, who has testified before the court on numerous occasions. Dr. Stern concluded that probationer suffered from no mental illness and did not constitute a risk to the community. The doctor's conclusion was based solely upon an interview or interviews with probationer in which Dr. Stern relied upon the credibility of petitioner.
Petitioner has an extensive criminal record involving anti-social and assaultive behavior. In 1989, he was convicted of a heinous crime involving the sexual assault of an eight year old female child. He did not admit to CT Page 1924 committing the crime but he did not contest the charge, exposing himself to a substantial prison term. The judge who accepted his plea was under an obligation to find that there was sufficient evidence for conviction. Guilt has been established. The judge imposed a sentence of seventeen years for the sexual assault and another offense. Probationer was required to spend eight years of that sentence in prison. The balance of the sentence was suspended and probationer was allowed to remain at large in the community but under the supervision of the Office of Adult Probation for five years.
Considering all of the relevant, reliable and probative evidence, it must be found that it has been established by a preponderance of the evidence that Probationer presents a high risk of repeating sexually abusive behavior in the future and is in need of specialized sex offender treatment.
Accordingly, good cause having been shown, the condition of petitioner's probation are modified to require specialized sex offender treatment. Such treatment shall be with Northeast Clinical Specialists or such other CATSO treatment provider or may be approved by Adult Probation.
Since it has been established that Probationer constitutes a high risk of repeating his sexually abusive behavior in the future, the Office of Adult Probation is authorized to notify members of household and bordering neighbors of his status.
Purtill, J.